WOFFORD v. CLARK.

Opinion delivered April 29, 1907.

1.  PARENT AND CHILD—CUSTODY OF CHILD.—While the court may in exceptional cases remove a child from the custody of its father where it is plainly necessary to secure its present and future well-being, the father, on account of his ability and knowledge of the world as well as the ties of duty and affection, is generally to be preferred in awarding the custody of the child.  (Page 467.)

2.  SAME—CHANGING HABITATION.—In awarding the custody of a child the chancellor should fix for it a definite home, and not provide that during a part of each month its home should be with its father and during the remainder of the month with its maternal grandmother.  (Page 468.)

Appeal from Franklin Chancery Court; *J. V. Bourland,* Chancellor; reversed.

STATEMENT BY THE COURT.

Appellee instituted habeas corpus proceedings before the chancery court of Franklin County for the custody of his son, Bennie Wofford.

Upon the hearing on affidavits and oral testimony the court found that appellee was the grandmother of the child, Bennie Wofford; that the mother of the child died January 21, 1900, when he was very small; that the child was then past seven years of age; that from the death of his mother his said grandmother has acted the part of a mother towards him, and has had the care and trouble of attending to his needs; that she is very much attached to the child; that she is a good woman, and is now a proper and fit person to have the care and custody of the said child.

The court then entered the following decree: "That for the next four months, beginning on this date, the said Maggie Clark have the care and custody of said child, allowing the plaintiff, A. B. Wofford, to have said child for the last ten days of each month, being required to convey the said child both ways at the expiration of ten days. That at the expiration of four months, the said A. B. Wofford shall be entitled to the custody of the said child for the last fifteen days in each month for and during the term and period of six months, he being required to convey the said child both ways. It is further ordered that the said Bennie Wofford have all reasonable care, nurture and education at home, and in day schools, when deemed prudent to send him. That the said child be at all times taught to love his father and stepmother, and that they have a welcome at the home of the respondent to visit the child at any reasonable time, and that the said father and stepmother are directed to teach the child to love, honor and respect its grandmother, and provided both parties hereto shall bear themselves towards each other in a neighborly manner, promoting amity and peace among themselves, cultivating the affections of the child each for the other and for his stepmother, so that when by death of the respondent, which in the natural course of events may not be many years, the said child Bennie may be fully restored to his father and stepmother as well in affections as bodily. It is ordered that the said A. B. Wofford return the said Bennie promptly at the expiration of his term of custody. The jurisdiction herein is retained for further orders upon notice of any change of circumstances that may demand them." At the December term appellant moved to modify the decree as follows: "Now comes the above-named plaintiff, and says that in obedience to an order and decree of this honorable court he has permitted his child, Bennie Wofford, to remain with the defendant, Maggie Clark, his grandmother, strictly in accordance with the terms of said decree. That on one or two occasions since the said decree was made and entered the said child, Bennie, has left his grandmother, the defendant in this action, returned to the plaintiff's home, and there seized around the neck and legs and impleaded with him to let him remain and be with plaintiff. And plaintiff says that the supplications and appeals of his child were so

great that he did not have the heart to force the said Bennie to
leave him and return to his grandmother, as the child begged
not to be returned to the defendant, his grandmother, but begged
to remain with him, telling plaintiff that he was happier with
him than he was with his grandmother, the defendant.    And
plaintiff says that, notwithstanding the solicitations and protesta-
tions of the said Bennie, the defendant, Maggie Clark, insisted
on having the custody of the child as per the terms of the said
decree, and caused the sheriff to pull him, the said Bennie, away
from plaintiff under the said child's strong protestations, and
plaintiff says that, as the said child Bennie was taken away
from him by the sheriff, he left with a broken heart, crying and
screaming and begging the sheriff to restore him to his father,
this plaintiff.    And plaintiff says that if said child is to be kept
away from him at the time and for the lengths of time mentioned
in the decree, he is fearful and believes that it will have the
effect to cause said child to grow rebellious in nature, and will
create in him a disposition far from enviable, but resentful in
nature. · And plaintiff further says that to so force the said
child to be torn away from the plaintiff, against the said child's
protestations and against his begging this plaintiff to keep him,
is a great burden on his (plaintiff's) heart, and is greater than
he can withstand and endure.    And plaintiff says that he is
amply able financially to care for, maintain and support said
child as he should be, and that he is in every way mentally, so-
cially and morally qualified to raise the said child as he should be,
and is very desirous of having this opportunity to discharge his
parental duty towards said child.    Wherefore plaintiff respect-
fully prays an order and decree of this honorable court setting
aside and holding for naught the former decree herein rendered
and to invest permanently the custody and care of said child in
this plaintiff."

The court overruled plaintiff's motion to modify its decree,
to which action of the court plaintiff at the time duly saved his
exceptions, which were noted of record.

On the hearing of this motion, the testimony heard at the
July term of court, as well as the additional testimony heard at
the December term of court, was heard by the chancellor.

The facts are substantially as follows:    The appellant mar-

ried the daughter of the appellee. Bennie Wofford, the child in controversy, was born of the marriage. Appellant's first wife was the only child of appellee. After the marriage appellant and his first wife lived for a time at Denning. Appellee and her husband went to live with appellant. They lived for a while at Denning. Then, after the death of appellant's first wife, he moved on to the farm of Mr. and Mrs. Clark and lived with them. He worked on the farm and made a living for them. At the time of the death of his wife in 1900, Bennie was 14 months old. He made his home from that time on with Mr. and Mrs. Clark until he remarried in December, 1904. During all the time he was with Mr. and Mrs. Clark he slept with his son Bennie at nights, waited on him, and cared for him as a father would do. He says that he never at any time agreed to surrender the custody of Bennie to them or any one else. When his wife died, he says that Mr. and Mrs. Clark requested him to let them keep Bennie until he remarried or else that he should live with them, and he says he elected to live with them and stay with Bennie. There was evidence to the effect that appellant and his second wife were amply able to provide for the child. The stepmother had no children of her own. She was much attached to Bennie and kind to him, and she, as well as appellant, wanted the care and custody of him, so that she might properly care for and educate him. Several witnesses testified on behalf of appellant that they knew appellant and his wife well; that they had a comfortable home and were well prepared to take care of and to support and educate Bennie; that appellant was an industrious and sober man; and that his wife was an excellent woman. It was shown by some of the witnesses that appellee was old, feeble, very childish, and did not have much control of the child; that he did with her about as he pleased, and in the opinion of these witnesses it was for the best interest of the child that appellant and his wife have him.

Appellee testified as follows:

"I am sixty-eight years of age. I am the grandmother of Bennie Wofford. His mother was my daughter. Her name was Dixie. She died some time in 1900 at Denning, where Mr. Wofford was living. Some time before his death my husband and I moved down there, and we lived altogether as one

family, and were so living at the time of my daughter's death. At the time of my daughter's death, Bennie was fourteen months old. After her death Mr. Wofford, Bennie and my husband and myself lived together as one family until December, 1904, at which time Mr. Wofford married his second and present wife and moved to himself, leaving Bennie with us, and stated to me that he never intended to take Bennie from us. I own something over one hundred acres of land, and have a good home on it in which I am living. I own six head of cattle, two of which are milk cows; eight head of hogs, two of which are killing hogs. I also own a large lot of chickens. I sell chickens, eggs and butter, and in that way I buy the groceries and part of the clothing of the family. While Bennie was with me, I kept him well clothed and clean. He was much comfort to me, and I can not see how I am to live without him. He was always obedient and easily controlled. He would frequently visit his father, and on his return home on one or two occasions I heard him using some profane language, and I asked him where he heard such talk, and he said he heard his father use it. Bennie also told me while he was with his father, his father gave him whisky to drink."

Appellee's husband corroborated her as to their ability to take care of the child, their tender love for him, etc. He says that their daughter, on her deathbed, requested her husband (appellant) to let them keep Bennie as long as they should live. and that he assented to the request. It was shown by Mrs. Jackson that she lived with Mrs. Clark for several months, and had an opportunity to know how she treated Bennie. She says that appellee treated him kindly, and that the child seemed to be fond of her. This witness testified that she had heard Bennie say that he had heard his father curse, and that he gave him a horse to cry to stay with him. The witness was of the opinion that appellee was the proper person to have the child.

The chancellor took the child, and the counsel for appellant and appellee into his chambers, and there Bennie said that "his father gave him some whisky to drink, and that he had heard his father curse, and that he wanted to live with his grandmother." The above are substantially the facts upon which the decree of the court was rendered at its July term. At the December term

the motion to set aside the former decree (the chancellor having retained jurisdiction of the cause) was heard upon the same facts and upon additional testimony, which on behalf of appellant tended to show that the boy was dissatisfied with the home at his grandmother's and wanted to live with his father, and on behalf of appellee tended to show that the child preferred to live with appellee, but that appellant was encouraging the boy to stay with him.  We deem it unnecessary to set forth the facts in detail upon which the motion was heard.

*Sam R. Chew,* for appellant.

As between the father and mother or any other relative of the child, the father is to be preferred; and it is only when plainly necessary to secure the present and future welfare of the child that the courts will remove a child from the custody of its parent.  37 Ark. 30; 95 S. W. 457; 97 S. W. 49.  The chancellor's decree in this case totally disregards the three things announced by this court as a guide in such cases, viz.: Humanity, respect for parental affection, and regard for the infant's best interests.  37 Ark. 27.  Morally, financially and intellectually, the father is shown in this case to be worthy and competent to care for and rear the child, and the decree's vexatious provisions deprive the child of the very things it most needs, a permanent home with its uplifting moral influences and the opportunity for an education.

*W. W. Cotton,* for appellee.

Appellee is the grandmother of the child.  There can be no reasonable doubt that at the time of the death of his mother the question of the custody of the child was discussed, that the mother requested that the child be kept by his grandparents while they lived, and that appellant assented thereto.  It is also in proof that at the time of his remarriage appellant stated to appellee that he never intended to take Bennie from them, showing that at that time he was carrying out the agreement.  9 Am. & Eng. Dec. in Eq. 66; *Id.* 101; 78 Ark. 251.  Having permitted the strongest ties of affection to grow up between the child and appellee, it would be inequitable now to separate them. 50 Ark. 355; 37 Ark. 31.  "The welfare of the child is the

cardinal point at issue. 95 S. W. 457. It is shown that ap-
pellee is in better financial condition to have the custody of the
child than appellant, and that she is more attentive and gives it
better moral training. See 9 Am. & Eng. Dec. in Eq. 67-8.

WOOD, J., (after stating the facts.) This court in *Verser
v. Ford,* 37 Ark. 30, said: "As between the father, too, and the
mother, or any other near relation of the infant, where sym-
pathies on either side of the tenderest nature may be relied on
with confidence, the father is generally to be preferred. In the
great majority of cases his ability and knowledge of the world
render him the fittest protector, although that is not the test.
The preference is conceded to the ties of duty and affection, and
attends the primary obligation of the father to maintain, educate
and promote the happiness of the child, according to his own
best judgment and the means within his power. Any system
of jurisprudence which would enable the courts in their discre-
tion, and with a view solely to the child's best interests, to take
from him (the father) that right, and interfere with those duties,
would be intolerably tyrannical, as well as Utopian." This is not
one of the exceptional cases, as in *Coulter* v. *Sypert,* 78 Ark.
193, where the circumstances justified the court in depriving
the father of his child and giving him to the grandparents. The
difference in the facts is shown by reference to the statement of
the cases. Here we are of the opinion that the best interests of
the child, even if that were the test, according to the preponder-
ance of the evidence, demand that the father have the care and
custody. He is amply able, from a financial standpoint, to
maintain and educate his child, and the proof does not show him
to be so devoid of moral attributes as that the welfare and safety
of his only child require that he should be separated from his
father and given to another. True, there is evidence to the
effect that the boy said he had heard his father curse, and that
his father had given him whisky to drink. But the circum-
stances are lacking in detail as to when, where, how many times,
etc., this was done. Certainly, such conduct on the part of a
father toward his seven-year old child deserves severe condem-
nation from a moral viewpoint. But it would not do to deprive
every father of the care and custody of his son because of such
conduct, especially when the circumstances are not known. The

policy of the law is not to sunder the companionship of father and his infant son for such obliquities unless they are so frequent, flagrant and long-continued as to be a permanent menace to the proper physical, mental and moral development of the infant.

In *Lipsey* v. *Battle*, 80 Ark. 287, we said: "The courts may remove a child from the custody of its parents, but this will only be done when it is plainly necessary to secure the present and future wellbeing of the infant."

We are of the opinion that no such considerations are established in the case at bar. But, even if the facts had warranted the chancellor in giving the custody of the child to his grandmother, the decree does not do so. The "changing habitation," which the chancellor's decree provides for the child, is most detrimental to his best interests in every particular. The child should have, in any event, a definite and settled home, either with his grandmother or with his father, and not have the environments of home life shifted and changed with every month. This is certainly not conducive to the best development and training of the child. While great weight should be given to the decree of the chancellor where, as in this case, he sees the parties and is more cognizant of the local surroundings than this court, we are, nevertheless, of the opinion that the decided preponderance of the evidence shows that his decree is erroneous. It will therefore be reversed and remanded with directions to the chancellor to enter a decree giving to appellant the permanent custody of Bennie Wofford. But, in consideration of the tender love of the appellee for the child, she shall be permitted to visit him at the home of his father whenever she desires, and the appellant shall be required at all reasonable and convenient times, in the discretion of the chancellor, to see that the child visits his grandmother, the appellee, upon her request for him to do so, and whatever expense may be attached to such visitations by the child to his grandmother shall be borne by the appellant. The chancellor will retain the jurisdiction, as heretofore, to make such orders, not inconsistent with this opinion, as he may deem necessary to preserve and protect the rights of the parties as above indicated.