BAKER *v.* DURHAM.

Opinion delivered June 13, 1910.

1. PARENT AND CHILD—GUARDIANSHIP.—By statute, as well as at common law, the father, unless incompetent or unfit, is the natural guardian of his minor children, and entitled to have their custody and the care of their education. (Page 358.)

2. SAME—CUSTODY OF CHILD.—An order of the chancery court placing the infant child of divorced parents in the custody of the mother's parents will be reversed and the custody placed in its father where he is financially able and is not shown to be otherwise unfit to have its custody and has manifested a proper affection for the child. (Page 358.)

Appeal from Faulkner Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

STATEMENT BY THE COURT.

At the March term, 1908, the Faulkner Chancery Court rendered a decree, granting to the appellant, H. G. Baker, a decree of absolute divorce from his wife, the appellee, now Fannie B. Durham. Although duly served with summons, the appellee did not appear to deny the allegations against her, nor to resist the suit. The custody of the infant child of the appellant and appellee, Ida E. Baker, then only a few months old, was at the time temporarily given to appellee, the decree of the court stating specifically that this was done on account of the tender age of the child, and that the court retained control of the cause for the purpose of making proper orders relative thereto in the future, and directing that appellant be permitted to see the child at all proper times.

Some time after the above decree was rendered Mrs. Baker took the child to the home of her father, Spence Lay, and left it. She then married a man by the name of Durham and left the county.

Thereupon the plaintiff filed a petition, making both Fannie B. Durham and her father, Spence Lay, parties, in which he alleged that conditions had changed since the rendition of the above decree by the court; that his former wife had remarried and that neither she nor her husband were able to care for the child; that the appellant had been refused the right to see and visit his child; that he loved his child with a father's affection, and was

financially able to care for it and rear it, and he asked that he be given the custody of his child.

Appellees appeared, and through their solicitor and by consent of appellant made a verbal response denying the allegations of the petition.

On the hearing of the cause the appellant read in evidence the testimony of a witness who testified that Spence Lay had told him that he and his daughter had forfeited their right to keep the child by not letting its father visit it, and that Lay had told him he would rather give up the child than let its father see it.

Another witness, Mrs. Davidson, testified that she had carried clothes from Mr. Baker to his child, after his wife had left it at Durham's; that on one occasion she went there on a very cold day and found the child alone in a room; that no one was at home with it except a sick girl in another room; that it was a very cold day, and the child was barefooted.

Pete Lay, brother of Mrs. Durham, testified that he did not know where his sister was living; that she was not living in Faulkner County a few days before; that he had taken her and her husband to the train at Heber, and they said they were going to Harrison.

Another witness, Mr. Keeling, testified that he had gone to Lay's house, and found the child there alone; that all the family were out in the field except Mrs. Lay, who was at another house on the place about a quarter of a mile away; and that the child was in a bad condition.

The appellant, Mr. Baker, testified that the time he went to visit his child his former wife ordered him away, and her father, Spence Lay, told him not to come back to see it any more; that he had carried it clothing; that he was financially able and was willing to take care of his child.

On behalf of appellees two witnesses, who claimed to have visited at Lay's home, testified that, as far as they observed, the child seemed to be properly cared for. Mrs. Lay testified that the appellant raised a disturbance when he came to see his child, and her daughter, the appellee, had ordered him away; that on this occasion her daughter, the appellee, had told Mr. Baker that he was not the father of the child; that a few days

before the giving of her testimony the child had fallen in the fire and was badly burned.

Fannie B. Durham, the appellee, testified "that while she and plaintiff resided together as man and wife he was quarrelsome, and that she left him on that account and on account of being afraid of him; that she did not appear against him in the divorce case because she knew she could not live with him; that she permitted Mr. Baker to come and see the child; that every time he was there, except once, he abused her."

The court made the following findings: "This is a petition by H. G. Baker asking for the transfer to himself of the custody of his little daughter, Ida E. Baker, from the custody of her mother, Fannie B. Durham, nee Baker, to whom the child was awarded by a former decree of this court granting petitioner a divorce.

"The court finds that the mother, after the divorce, returned and lived with her father, the respondent, Spence Lay, until her recent marriage, and that since her recent marriage she still lives on her father's farm, and that the child, Ida E. Baker, has, since the separation of her father and mother, lived continuously with and been cared for by her grandfather, Spence Lay, and that her grandmother and grandfather are much attached to her, and that she is being well cared for, and that it is to the best interests of the child that she be allowed to remain with her grandparents for the present."

Upon these findings the court rendered the following decree: "It is therefore ordered and decreed by the court that the custody of said child, Ida E. Baker, be shifted to her grandfather, Spence Lay, and that her father, H. G. Baker, and her mother, Fannie B. Durham, née Baker, both be allowed to see said child at all reasonable times, provided that they demean themselves properly when visiting said child, otherwise they are not to be allowed to see said child. The child shall not be taken beyond the jurisdiction of said court without first obtaining leave. The court retains control of the cause for further orders as occasion may require for the welfare of the child."

Appellant duly prosecutes this appeal.

*R. W. Robins,* for appellant.

Generally, the father is first entitled to the possession of his infant child. 37 Ark. 30; 82 Ark. 461; Kirby's Dig., § 3757; 32 Ark. 96.

WOOD, J., (after stating the facts). "By statute, as well as by common law, the father (unless incompetent or unfit) is the natural guardian, and entitled to the custody, care and education of his minor children." *Boles* v. *Dickson,* 32 Ark. 96; sec. 3757, Kirby's Digest; 21 Enc. Law, 1036, 1037.

In *Verser* v. *Ford,* 37 Ark. 30, this court, through Judge EAKIN, said: "Any system of jurisprudence which would enable the courts in their discretion, and with a view solely to the child's best interests, to take from him that right, and interfere with those duties, would be intolerably tyrannical, as well as utopian." Even as between the father and the mother, the custody in the father is generally allowed unless the child, on account of tender years, or being a female, imperatively requires, for its well being, that attention which a mother's love and care alone can supply. But, as between the parent and grandparent, or any one else, the law prefers the former unless the parent is incompetent or unfit, because of his or her poverty or depravity, to provide the physical comforts and moral training essential to the life and well being of the child. It must be an exceptional case where the evidence shows such lack of financial ability or such delinquencies in character on the part of the father as to imperil the present and future welfare of his child before a court of chancery will deprive him of the duty and the privilege of maintaining and educating his child, and of the pleasure of its companionship. See *Wofford* v. *Clark,* 82 Ark. 461.

There may be other exceptional cases where the father, by reason of indifference to the welfare of his child and the lack of proper affection for it, has voluntarily relinquished these parental obligations, privileges and pleasures to other hands for so long that the court will refuse to disturb the associations and environments which his own conduct has produced, and will leave *in statu quo* those whom he has thus permitted to stand *in loco parentis. Coulter* v. *Sypert,* 78 Ark. 193.

But the evidence in this case fails to discover any of these exceptional cases. As was said by us in *Wofford* v. *Clark, supra:* "While great weight should be given to the decree of

the chancellor, where he sees the parties and is more cognizant of the local surroundings than this court, we are nevertheless of the opinion that the decided preponderance of the evidence shows that his decree is erroneous." For here the father has all along manifested an affection for his child and a desire to have its custody. When the decree of divorce was obtained, the court doubtless correctly awarded the temporary custody of the child, because it was a female and of tender years, to its mother. But when the mother married again and left the child in the hands of her grandparents, and left the county, as the evidence tends to show, the appellant was warranted in making application for the custody of his child. The court had not awarded the child to her grandparents, but to her mother; and, as between them and the father, the latter shows the better right. He shows that he was financially able to provide for his child. There is no showing in the record that he is incompetent or unfit to discharge the duties which the law enjoins upon him as the natural guardian of his daughter. Since the court has seen proper to take the custody of the child from the mother, we are of the opinion that under the evidence adduced it should have next bestowed it, at his request, upon the father. The grandfather, for aught that appears, was not asking it, and there is no evidence to show that he was better able, financially or otherwise, to provide for the child. Nor does the evidence show that these grandparents were lavishing such wealth of attention and affection upon this child as to render it inhuman, either to them or the child, to take her away from them and give her to her father.

The decree is therefore reversed, and the cause is remanded with directions to enter a decree awarding the custody of the child to the appellant.