LOEWE *v.* SHOOK.

Opinion delivered June 14, 1926.

1. PARENT AND CHILD—CUSTODY OF CHILD.—As between a mother and grandparents, the mother is entitled to the custody of her child, unless incompetent or unfit, because of poverty or depravity, to provide the physical comforts and moral training essential to its life and well-being.

2. HABEAS CORPUS—CUSTODY OF CHILD—EVIDENCE.—In a proceeding of habeas corpus, evidence *held* to sustain an award of the custody of a three-year-old girl to her mother rather than to her grandparents.

3. INFANTS—PROTECTION OF COURTS.—In awarding the custody of a child to its mother rather than to its grandparents, chancery retains jurisdiction to restore the child to its grandparents if it becomes necessary for the best interest of the child to do so.

Certiorari to Drew Chancery Court; *E. G. Hammock,* Chancellor; affirmed.

*Wilson & Norrell,* for appellant.

*Poff & Smith,* for appellee.

HUMPHREYS, J. This case is before us on review to determine the correctness of an order of the chancellor of the Second Chancery District awarding the custody of a three-year-old girl to her mother, Mrs. Thelma Shook, in a contest between the child's grandparents, H. C. and Minnie Loewe, and herself. The contest was instituted by Thelma Shook, who petitioned and obtained a writ of habeas corpus from said chancellor for the custody of her child, Virginia Bernice Loewe, against the grandparents named above and the child's two uncles, Oscar and Ted Loewe, who were residing with the grandparents, their father and mother. Mrs Shook's first husband was Arthur Loewe, a son of H. C. and Minnie Loewe. After their marriage they resided with his parents, where the child was born. Mrs. Shook nursed and cared for the child while living with his parents. They subsequently moved to a farm in Kansas, where they had resided only four months when he died. After her husband's death Mrs. Shook came back to Arkansas, going first to her sister, then to her parents,

then back to her sister, then to the Loewes', and then back to her parents, taking the child from place to place with her. She remained with her parents the entire summer until some time in November, 1924. In February, 1925, she went to work as a saleslady at McGehee, leaving the child with the Loewes. She went from there to Tripp Junction, where she worked in a filling station until April, 1925, at which time she married her present husband, Dalton Shook, who is in the employ of the government making $175 to $200 a month. After marrying, they lived for a while with Mr. Shook's mother, then moved to Halley, where they are keeping house. Mrs. Shook visited the child during the six months she was working prior to her second marriage. After marrying Shook, she got her child and kept it for about two weeks. She then became ill, and requested the Loewes to keep the child until she got well, at which time they refused to give it to her. This suit followed.

There can be no question in the law that, as between a mother and grandparents, the mother is entitled to the custody of her child, "unless incompetent or unfit, because of poverty or depravity, to provide the physical comforts and moral training essential to the life and well-being of her child." *Washaw* v. *Gimble,* 50 Ark. 351; *Baker* v. *Durham,* 95 Ark. 335.

Appellants' contention for a reversal of the order is that Mrs. Shook is not a fit person to have the custody of her child. In support of this contention, learned counsel for appellants have called our attention to the testimony tending to show that Mrs. Shook was an immoral woman. Practically all of the testimony tending to show this fact related to her conduct prior to her marriage to Dalton Shook and while she lived with him. Her reputation for immorality was based largely upon the fact that she went riding at nights during that period with a married man or two. There is nothing in the record of consequence tending to show that she has continued this alleged conduct or that she has been guilty

of any indiscretion since she married Dalton Shook. The child is barely four years of age at this time, and, if her mother is conducting herself discreetly, we can see no good reason why she should be deprived of the joy of parental relationship. If she is leading and will continue to lead a righteous life, the pleasures incident to motherhood should be accorded her by the courts. According to the record, she is not lacking in affection for her child. She is keeping house in Halley, and her husband is amply able and willing to maintain, support, and educate the child. We are unable to discern anything in the record to indicate that the present and future welfare of the child will be imperiled by placing it under the care and control of the respondents. If the welfare of the child should at any time in the future be jeopardized by the misconduct of the mother, or for any other reason it becomes necessary for the best interest of the infant to restore its custody to the grandparents, the chancery court always has jurisdiction in such matters.

The order is therefore affirmed.