Argued at Pendleton May 4; reversed September 15, 1942

## Ex Parte ARMSTRONG
## ARMSTRONG *v.* VANCIL ET AL.
### (128 P. (2d) 951)

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND and BRAND, Associate Justices.

*Clarence B. Phillips*, of Burns, for appellant.

*E. P. Truesdell*, of Canyon City, and *Earl B. Moore*, of John Day, for respondents.

■ BRAND, J. The case will be decided upon the narrow issue presented above, but the original pleadings are before us (O. C. L. A. 10-808), and the situation which they present will aptly illustrate the basis of our reasoning and conclusions. From the pleadings, abstract and statements of counsel in this court, we glean the following facts: Dallas F. and Vetta Vancil were the father and mother of the infant, Earl Ivan Vancil, later known as Earl Ivan Armstrong. On February 25, 1938, the county judge of Grant county made an order appointing the paternal grandparents, William Vancil and Rosa Vancil, as joint guardians of

the infant, Earl Vancil, then 17 months old. On September 30, 1938, Vetta Vancil, mother of the infant, having brought suit for divorce in Harney county, was granted a decree with custody of the infant. She was unable to secure possession of the child. On February 12, 1940, Melvin Armstrong, who had married Vetta Vancil after her divorce, petitioned the county court of Harney county for an order of adoption, and on May 8, 1940, by order of said court, the infant was adjudged the adopted son of Melvin Armstrong, then husband of Vetta Armstrong, the mother of the child. The child being still in the custody of the grandparents in Grant county, Melvin Armstrong, as adoptive father of the infant, petitioned the circuit court of Grant county for a writ of habeas corpus. The writ issued, the cause was tried and judgment rendered on October 20, 1941. By that judgment, the circuit court of Grant county, Judge Duncan presiding, held that the infant was being unlawfully retained by the grandparents, William Vancil and Rosa Vancil, in Grant county, ordered that the petitioner, Melvin Armstrong, be awarded the custody of said infant, directed the sheriff of Grant county to take the infant into his custody and forthwith deliver him to the petitioner Armstrong. The record next shows an astounding order, dated October 21, 1941, by the judge of the juvenile court of Grant county, purporting to enjoin the sheriff from executing the judgment of the circuit court of that county. This order was of no effect. The judgment of the circuit court was executed by the sheriff, and the child was delivered to the petitioner, Armstrong, who resides in Harney county.

Thereafter, and on November 17, 1941, the term of the circuit court for Grant county terminated, and a new term commenced. L. 1941, Ch. 99, p. 151. On the

19th day of November, William Vancil and Rosa Vancil, the unsuccessful litigants in the habeas corpus proceeding, filed a motion for the modification of the judgment filed October 20, 1941, concerning the custody of the infant. The motion recited that it was "based upon newly discovered evidence, the records and files of this cause and the affidavits hereto attached as exhibits A, B and C." No supporting affidavits appear in the abstract. The record fails to show that this motion was served upon plaintiff Armstrong or his attorney or that any citation or writ based thereon ever issued. On the same day, November 19, 1941, the circuit court of Grant county, Judge Wilson presiding, made an order in part as follows:

"This cause coming on to be heard on the motion of William Vancil and Rosa Vancil for an order of the Court modifying that certain judgment made and entered on the 20th day of October, 1941 * * *

"And it appearing to the court that said motion should be heard and that pending the hearing of said motion the said infant child Earl Ivan Vancil, sometimes known as Earl Ivan Armstrong should be kept within the custody and control of the court,

"It is therefore, considered, ordered and decreed that said motion should be heard at a time hereinafter to be set by the court at the court's convenience, and that pending said hearing said child Earl Ivan Vancil * * * be restored to the custody and control of this court and kept under such custody and control until the final determination of said matter. It is further ordered, adjudged and decreed that the sheriff of Harney County be required forthwith to deliver said infant child * * * to this court forthwith and the custody and control of said infant to be retained by this court until the final determination of this matter * * *."

Although by the foregoing order a hearing was to be had upon the motion for modification of the judgment and the child returned to the custody of the Grant county court, we are informed by the argument of counsel for the Vancils that no hearing was ever had and that the infant was in fact returned to the grandparents where he has remained. Thus, upon motion for rehearing, but without the rehearing being had, the status quo as established by the judgment of the circuit court in the habeas corpus proceeding was upset, and the defeated parties were awarded the fruits of victory, which they still enjoy.

Serious questions might arise as to the validity of the Grant county guardianship proceedings, and perhaps as to those for adoption, but the jurisdiction of the court in the habeas corpus proceeding was questioned, and it was also conceded that Vetta Vancil was divorced by decree of the Harney county court, although it was contended that the circuit court of Harney county had no power to award to her the custody of the child because of the purported guardianship proceeding and because the guardians were not parties to the divorce case.

It is unnecessary, however, to pass upon the validity of the earlier proceedings. A consideration of the nature and function of *habeas corpus* when employed to determine or enforce the right to the custody of infants will suffice. This proceeding serves at least two separate and distinct purposes in our jurisprudence. By the writ of *habeas corpus ad subjiciendum* (a writ of ancient common law origin and high prerogative) one may seek immediate relief from illegal imprisonment. 25 Am. Jur., p. 145, § 4; 29 C. J. 6. It is this writ when issued for its original purpose that was in the contemplation of the legislature when O. C.

L. A. 11-443 was enacted. And it is from a judgment of this kind that appeal is to be taken "in like manner and with like effect as in an action", as provided in that section.

■■■ But it is firmly established in this jurisdiction that the writ is also available in courts of equity to accomplish ends other than those for which it was originally designed. Specifically, the writ may be employed to determine controversies concerning the right to the custody of infants. Where the writ is employed for that purpose, the proceeding partakes of the nature of a suit in equity and is considered to be one in rem, the child being the *res*, 25 Am. Jur., p. 203, § 78; *In re Newman's Estate*, 75 Cal. 213, 16 P. 887, 7 Am. St. Rep. 146 (1888). The general scope of the injury is well stated in the following text:

> "The court, in passing upon the writ in a case involving the custody of a child, deals with a matter of an equitable nature; it is not bound by any mere legal right of parent or guardian, but is to give his or her claim to the custody of the child due weight as a claim founded on human nature and generally equitable and just." 25 Am. Jur. p. 204 § 80.

So, it is held that in the absence of statute, the court of equity would have jurisdiction in such cases, and the provisions of O. C. L. A. 11-443 relative to the manner and effect of appeal would not apply.

> "* * * We conclude that the use of the writ, as it was available at common law, is still available in courts of equity, and the fact that our legislature has seen fit only to provide a mode of procedure for its exercise in the cases for which it was originally designed, and is silent as to procedure in cases calling for the exercise of chancery powers in connection therewith, it follows that the statutory

proceedings in equity cases are still available in this proceeding, which is clearly *sui generis.*" *Turner v. Hendryx*, 86 Or. 590, 167 P. 1019, 169 P. 109 (1917).

Accordingly, it is held that in equitable proceeding by writ of habeas corpus to determine the right of custody of infants, the trial on appeal to this court is de novo, despite the provisions of O. C. L. A. 11-443. *Ex parte Barnes*, 54 Or. 548, 104 P. 296, 25 L. R. A. (N. S.) 172, 21 Ann. Cas. 465 (1909) ; *Turner v. Hendryx* (supra) ; *In re Henkle*, 153 Or. 337, 56 P. (2d) 343 (1936).

■■ Although a court in habeas corpus has broad powers of inquiry as to the character and qualifications of those seeking custody of the infant and although such powers closely resemble those of a circuit court in divorce proceedings, where the custody of infants is involved, it does not follow that the court in habeas corpus will always exercise its broad discretionary powers. Judicial discretion is guided and governed by rules of law.

"The court cannot refuse an application for the custody of a child by a person who has the legal right to the custody if the applicant is a fit person." *In re Henkle* (supra). *Byrant v. Dukehart*, 106 Or. 359, 210 P. 454 (1923).

■■ Nor does it follow that a chancery court employing the writ of habeas corpus has continuing jurisdiction such as expressly given to divorce courts by statute. O. C. L. A. 9-915, *Mason v. Mason*, 148 Or. 34, 34 P. (2d) 328 (1934) ; *Hess v. Hess*, 115 Or. 595, 239 P. 124 (1925). In the judgment which was rendered by the circuit court of Grant county on October 20, 1941, whereby the petitioner Armstrong was awarded custody of the infant, we find no provision retaining or

attempting to retain continuing jurisdiction, so the effect of such a provision is not before us. See *State ex rel. Ahrens v. Rassieur*, 186 Mo. App. 214, 171 S. W. 688 (1914) and 29 C. J. 177.

■ We find no previous Oregon case in which a court exercising its jurisdiction in habeas corpus has attempted to act after the entry of the judgment and the expiration of the term, but the weight of authority elsewhere appears to deny the existence of continuing jurisdiction in such case. Where a writ of habeas corpus inquires into the legality of the petitioner's imprisonment, the general rule has been applied which denies power of the court to vacate judgments after the end of the term. *Aderhold, Warden, v. Murphy*, 103 Fed. (2d) 492 (1939). If it be argued that this rule should not be applied when the proceeding is in equity to determine custody of an infant, we are confronted by the holding of this court that

> "The rule is well settled in this state that, after the expiration of the term during which a decree was rendered, it is not within the power of the court to amend in any matter of substance or in any way affecting the merits of the controversy." *Smith v. Rose*, 125 Or. 56, 242 P. 842, 265 P. 800 (1928); *Silliman v. Silliman*, 66 Or. 402, 133 P. 769 (1913).

■ Two questions must be distinguished. One relates to the power of a court to exercise continuing jurisdiction in the same suit. The other relates to the effect of a judgment in habeas corpus on the right to bring a new suit. It is generally held that a final adjudication on habeas corpus as to the custody of an infant conclusively determines all questions involved as between the same parties and upon the same state of facts. 25 Am. Jur. p. 253, § 158. On the other hand,

it is held that the judgment in habeas corpus is not a bar to a new proceeding based on changed conditions. Such a judgment cannot be considered as res judicata *on a subsequent application* for a writ of the same nature. 25 Am. Jur. p. 254, § 158. Counsel for respondents argue that the rule which permits a new proceeding in habeas corpus based on conditions which have changed after the first adjudication also authorizes the modification of the original judgment by motion in the original case after expiration of the term. The following cases involving custody of children establish a contrary rule and deny the claim of continuing jurisdiction in such proceedings. *State ex rel. Ahrens v. Rassieur* (supra); *Ex parte Smith* (Mo.) 200 S. W. 681 (1918); *Scheiring v. Baker*, 202 Ind. 678, 177 N. E. 866 (1931); *Hardy v. McCulloch* (Texas) 286 S. W. 629 (1926); *Gray v. Gray*, 121 Miss. 541, 83 So. 726 (1920). In support of their position, respondents quote the following from Corpus Juris:

> "An order awarding the custody of a child in habeas corpus proceedings, being only temporary and intended for the condition of things as they exist at the time, may be modified whenever required by a change of circumstances." 29 C. J. p. 177, § 198.

The text does not make clear whether the modification is to be had by applying for a new writ or by motion to modify the original judgment. Cited in support of the text is the case of *Dixon v. Dixon*, 72 N. J. Eq. 588, 66 Atl. 597. In that case, it was held that the court in habeas corpus had continuing jurisdiction of the matter of the custody of the children, but the New Jersey statute expressly authorized the court in such cases to exercise continuing jurisdiction, and the original judgment in habeas corpus expressly retained

such jurisdiction. The case is not in point. *Loewe v. Shook,* 171 Ark. 475, 284 S. W. 726 (1926), is also cited in support of the text. In that case the court in habeas corpus proceedings awarded custody of the child to the mother and said:

"If the welfare of the child should at any time in the future be jeopardized by the misconduct of the mother, or for any other reason it becomes necessary for the best interest of the infant to restore its custody to the grandparents, the chancery court always has jurisdiction in such matters."

There is nothing to indicate that the court intended to hold that the court retained continuing jurisdiction in the specific case. The court may equally as well have meant that a judgment in habeas corpus is not a bar to the bringing of a new proceeding upon changed conditions. *Hardy v. McCulloch* (supra) is also cited in support of the text, but the court in that case said:

"The right to modify or set aside such a judgment is not confined to the court in which such judgment was rendered. A proceeding seeking such relief may be instituted and prosecuted in another and different court. Ex parte Garcia, supra. Such a proceeding *is in effect a new suit to determine* the right to the custody and control of the minor as between the parties thereto at the time it is instituted. Being a new suit in effect, whether it is such in form or not, it follows that the jurisdiction of the court must be invoked by a proper petition as in other civil cases, and that parties adversely interested are entitled to notice of the proceeding and an opportunity to answer and contest the allegations of such petition." (Italics ours.)

The case of *Ex parte Winn,* 48 Ariz. 529, 63 P. (2d) 198, removes the ambiguity in the text of Corpus Juris quoted above. Speaking of the power of a court of

equity to modify the judgment in a previous habeas corpus proceeding, the court said:

"But such a decree can be modified only in a new habeas corpus proceeding, because the statute does not authorize the court to retain jurisdiction for this purpose, as it does in disposing of its custody upon the dissolution of the marriage tie."

A circuit court of this state, having acquired jurisdiction in a divorce suit, retains continuing jurisdiction to modify its orders concerning custody as the best interests of the child may require. An Oregon court in habeas corpus has no such continuing jurisdiction.

■ We conclude that the judgment of the circuit court of Grant county which was rendered on October 20, 1941, granting custody of the infant to the petitioner, Melvin Armstrong, was final and conclusive as between the parties thereto and upon the facts then existing. Upon the expiration of the term of the court in which that judgment was rendered the power of the court to modify the same in matters of substance ended, and the subsequent order of the circuit court on November 19, 1941, which purported to be based on a motion filed in the original case was void.

The modification order of November 19, 1941, being void and the judgment of October 20, 1941, being in full force and effect, the cause will be remanded to the circuit court with directions to vacate of record the order of November 19, 1941, and to direct the sheriff of Grant county forthwith to take into his custody and possession the infant, Earl Ivan Armstrong, and execute the judgment of the circuit court of Grant county by delivering the said infant into the possession of Melvin Armstrong, the petitioner, petitioner to recover costs.