Marilyn Kay (Neely) Hill *v.* Elmer Lee Neely

·5-4281                                                 415 S. W. 2d 558

Opinion delivered June 5, 1967

*Wilton E. Steed,* for appellant.

*Max M. Smith,* for appellee.

Paul Ward, Justice. This appeal culminates a long fight by a mother for the custody of her two minor children.

On December 23, 1959 Marilyn Kay (Neely) Hill, appellant, was married at the age of fourteen to Elmer Lee Neely, appellee, who was then sixteen years old. Two children, Tommy Lee and Cindy Kay, were born to them before they separated the latter part of 1961.

On January 16, 1962 appellee filed suit for a divorce on the ground of indignities. The court, on February 17, 1962 ordered appellee to pay $20 per week for support of the children pending trial. On July 20, 1962 the court granted a divorce to appellee, gave custody to appellant,

and ordered appellee to make delinquent support payments and to continue paying in the future.

On January 11, 1964 appellee (the father) filed a petition alleging appellant (the mother) "has neglected and at times abandoned said children leaving them in custody of plaintiff's (appellee's) mother and sister most of the time". After a hearing the court on May 11, 1964, gave custody of the children to Mr. and Mrs. Gerald Davidson — the latter being the sister of appellee.

After appellant had made repeated but futile efforts to regain legal custody of her children and to force appellee to make the monthly payments for support, she filed, on October 13, 1966, another petition asking for custody of her children. In this petition she alleged she had remarried, that she now had a good home for the children, and that her present husband wanted her to have custody and was able and willing to support them.

A hearing was held on the above petition and the court, on January 6, 1967, refused same, and ordered the case "continued for a period of twelve months at which time or thereafter the court will give further consideration to the matter". From the above order denying custody, appellant prosecutes this appeal.

It is our conclusion that the case must be reversed and custody of the children given to the mother.

In reaching the above conclusion we deem it sufficient to point out below certain facts and circumstances.

(a) There is, with the exception noted, no showing that the mother is not a fit person to have custody of her children. There is testimony to the effect that appellant, on one or two occasions, was heard using profane language in her own apartment. This was denied and explained by appellant.

(b) The father at no time contends he wants custody, of his children, that he is able to support. them, or that he is a fit person to have custody of them.

(c) There is no reasonable showing··that appellant abandoned the children. In fact appellee did not so allege. He merely alleged that she left them with his mother and sister most of the time. This allegation is, to our satisfaction, explained by the undisputed testimony While appellant had legal custody she was working to support herself and the children. During this time appellee failed and refused to make monthly payments as ordered by the court. Also, during this time appellant was compelled to spend much time with her mother who was seriously ill, and soon died. Under these circumstances we are at a loss to understand how appellant could have used better judgment than she did. It is not disputed that she visited the children "nearly every week." Webster defines the word "abandon" as "to give up with the intent of never again claiming one's rights or interest in." As previously pointed out, appellant here made repeated efforts to regain custody of her children. Under these circumstances we cannot hold appellant abandoned her children.

In the case of *Loewe* v. *Shook*, 171 Ark. 475, 284 S.W. 726, this Court made the following statement:

> "There can be no question in the law that, as between a··mother and grandparents, the mother is entitled to the custody of her child, 'unless incompetent or unfit, because of poverty or depravity, to provide the physical comforts and moral training essential to the life and well-being of her child.' "

In *Kale Payne* v. *E. Leroy Jones, et ux*, 242 Ark. 686, 415 S. W. 2d 57, delivered May 29, 1967, this Court used language which is pertinent and decisive here:
> "To take a parent's child away from him and give

it to strangers is an extreme measure — a step which the courts should and do take only when the evidence clearly justifies such a course."

In the same opinion we also find this statement:

". . .the right of natural parents to the custody of their children, as against strangers, is 'one of the highest natural rights, and the state cannot interfere with this right simply to better the moral and temporal welfare of the child as against an unoffending parent.' "

In view of what has heretofore been said we also do not agree with the trial court that a final hearing should be continued to a future date. A further delay could only tend to make the situation more difficult for the mother, the children and the present custodian.

The cause is therefore reversed and remanded for entry of a decree consistent with this opinion, and for the imposition of reasonable visitation rights in the father.