Virginia HENDERSHOT *v.* Judy A. HENDERSHOT and Tom V. Hendershot

CA 89-425 785 S.W.2d 34

Court of Appeals of Arkansas
Division I
Opinion delivered February 28, 1990

*Tucker & Thrailkill*, by: *Patricia A. Tucker*, for appellant.

*Gordon L. Humphrey, Jr.*, Legal Services of Arkansas, for appellees.

JOHN E. JENNINGS, Judge. The appellees, Tom and Judy Hendershot, were divorced in 1983, and Judy was awarded primary custody of their child, Chancy. In 1989 the appellant, Virginia Hendershot, Chancy's great-aunt, filed a "Petition to Intervene and Other Relief" seeking to intervene in the divorce case and asking for court-ordered visitation with her grand-nephew. Both of the child's parents opposed the petition and filed a motion to dismiss. After a hearing, the chancellor granted the motion. The argument on appeal is that this was error. We disagree and affirm.

Although the appellant's claim was styled as a petition to intervene it was, in actuality, an independent action seeking court ordered visitation rights. The appellees' divorce action had been terminated by a final order some six years before this petition was filed. The petition did not seek custody, did not allege that appellant had previously had legal custody of Chancy, and did not allege that either parent was unfit. It did allege that appellant had, "for the most part, raised" the defendant, Tom Hendershot; that she had cared for her grandnephew, Chancy, for extended

periods of time; that she "figures significantly in the life" of the child; that she stands "in loco parentis" with the child; and that it would be in the child's best interest that she be allowed to visit him. Appellant also alleged that Judy Hendershot had not permitted her to visit with the child for the past four weeks.

At the hearing on the motion to dismiss, counsel for the appellant was permitted by the court to make a statement as to what additional matters she thought that she could prove. While appellant's counsel characterizes her statement as "testimony," it is apparent that the trial court treated it as additional allegations and, in effect, permitted amendment of the pleadings under Ark. R. Civ. P. Rule 15, even though appellant made no specific request that the complaint be amended.[1] The additional allegations made by appellant were: that she was an accountant, practicing in DeQueen, Arkansas; that Tom Hendershot had lived with the appellant from age eleven or twelve until he went to college; that she was at the hospital when Chancy was born; that the child had spent four Christmases with her; that she had voluntarily kept Chancy for a period of nine months in 1988 while Judy Hendershot went to Texarkana; and that she had spent thousands of dollars on the child.

The issue is whether a great-aunt may maintain an independent action for visitation with her grandnephew, when she has never had legal custody of the child, over the objections of both parents, neither of whom are alleged to be unfit to have custody of the child. To decide this issue it is necessary to examine our law relating to the visitation rights of grandparents. In *Veazey* v. *Stewart*, 251 Ark. 334, 472 S.W.2d 102 (1971)), the court stated that "under the general law there is no right of visitation enforceable by injunction in favor of a grandparent with respect to a grandchild when a natural parent having custody resists or objects." In *Quarles* v. *French*, 272 Ark. 51, 611 S.W.2d 757 (1981), the court said "at common law, a grandparent could not maintain an action for visitation rights to a grandchild except as a party to a custody proceeding." In *Cox* v.

---

[1] To take a different view would mean that the trial court was obliged to decide the motion to dismiss based solely on the complaint as filed. *See Guthrie* v. *Tyson Foods*, 285 Ark. 95, 685 S.W.2d 164 (1985).

*Stayton,* 273 Ark. 298, 619 S.W.2d 617 (1981), an adoption case, the supreme court discussed the reason behind the rule:

> What the appellants ask us to do through this line of argument is to recognize some form of inherent 'grandparental rights' beyond those previously bestowed. This we decline to do, not out of disregard for the genuine relational ties which naturally exist between grandparents and grandchildren, but rather for the reason that the sanctity of the relationship between the parent and the child must be the overriding concern. To create new, enforceable rights in grandparents could lead to results that would burden rather than enhance the welfare of children.

In 1975 the New Jersey Supreme Court in *Mimkon* v. *Ford,* 66 N.J. 426, 332 A.2d 199 (1975), said that "[t]he courts have been substantially unanimous in denying a grandparent visitation privileges with grandchildren when the custodial parent objects." The court found five reasons cited in the cases for such a rule:

> (1) Ordinarily the parents' obligation to allow the grandparent to visit the child is moral, and not legal.

> (2) The judicial enforcement of grandparent visitation rights would divide proper parental authority, thereby hindering it.

> (3) The best interests of the child are not furthered by forcing the child into the midst of a conflict of authority and ill feelings between the parent and grandparent.

> (4) Where there is a conflict as between grandparent and parent, the parent alone should be the judge, without having to account to anyone for the motives in denying the grandparent visitation.

> (5) The ties of nature are the only efficacious means of restoring normal family relations and not the coercive measures which follow judicial intervention.

*See also* Brummer & Looney, *Grandparent Rights in Custody, Adoption and Visitation Cases,* 39 Ark. L. Rev. 259, 263 (1985).

 Because of the position taken by most courts, the legislatures of all fifty states have now enacted statutes which

permit the granting of visitation rights to grandparents. *See* Fernandez, *Grandparent Access: A Model Statute*, 6 Yale L. & Pol'y Rev. 109 (1988). In Arkansas the first legislation regarding grandparent visitation was Act 320 of 1975 which authorized the chancellor to grant such visitation rights in connection with a divorce or custody proceeding. That act was repealed by more comprehensive legislation, Act 403 of 1985, which was subsequently amended by Act 17 of 1987, and is now codified at Ark. Code Ann. § 9-13-103. The code section provides that chancery courts are authorized to grant grandparents and great-grandparents reasonable visitation rights if such an order would be in the best interest of the child. The section applies only when the marital relationship between the child's parents has been severed by death, divorce, or legal separation. The section also contains a provision authorizing the court to award attorney's fees and costs against the petitioner if it finds the petition "not well-founded."

 If, as the supreme court has held, there is no common law right to grandparent visitation, it must logically follow that a great-aunt would have no such right. The legislature has seen fit to change the rule by statute to allow such rights to grandparents and great-grandparents, under certain circumstances and with specific protective provisions for the parents. The statute is clear and cannot be read to include the appellant. Nor can we agree with appellant's argument that, because she helped raise Tom Hendershot, she should be treated as a grandparent under the statute. When the language of the statute is clear it is our duty to apply it as it is written. *Hinchey* v. *Thomasson*, 292 Ark. 1, 727 S.W.2d 836 (1987).

In reaching our conclusion we have also examined *In re Custody of D.M.M.*, 137 Wis.2d 375, 404 N.W.2d 530 (1987), a case which appears on its face to support the appellant's position, even though it is not binding precedent for us. There the Wisconsin Supreme Court held that a statute authorizing trial courts to order visitation for grandparents and great-grandparents did not preclude a petition for visitation rights filed by a great-aunt. The case is distinguishable on two grounds: first, the great-aunt in that case had had legal custody for six years; and second, under prior Wisconsin case law such an action was not prohibited. *See Weichman* v. *Weichman*, 50 Wis.2d 731, 184 N.W.2d 882 (1971).

We are persuaded that the trial court was correct in granting the motion to dismiss.

Affirmed.

COOPER and ROGERS, JJ., agree.