Lori GOLDEN *v.* Edward GOLDEN, Jr.

CA 96-478                942 S.W.2d 282

Court of Appeals of Arkansas
Division II
Opinion delivered April 23, 1997

[Petition for rehearing denied May 21, 1997.]

144

*Griffin, Rainwater & Draper*, by: *Sandra Coody Bradshaw*, for appellant.

*Bridewell & Bridewell*, by: *Laurie A. Bridewell*, for appellee.

WENDELL L. GRIFFEN, Judge. This appeal and cross-appeal involve challenges to a chancellor's order granting visitation rights to a stepfather (appellee) over the objection of the natural mother (appellant), and permitting paternity-test results to be obtained and entered into evidence to prove that appellee did not father the child. Appellee also contends on his cross-appeal that the chancellor erred by ruling that he was required to prove that appellant was an unfit mother after the paternity-test results were received into evidence, and by refusing to find that appellant was estopped to deny that he was the father of the child. We find no reversible error as to the appeal or the cross-appeal. Therefore, we affirm.

Appellant Lori Golden and appellee Edward Golden, Jr., dated from November 1992 until late December 1992, and resumed the relationship in February 1993. During their separation, appellant dated and had sexual intercourse with another man. On July 19, 1993, appellant and appellee were married, and appellant was pregnant at the time of the marriage. The child, Edward Golden, III, was born in October 1993, two weeks premature. Appellee was identified as father of the child on the birth certificate, on health records and in applications for social services.

Appellee Edward Golden filed for divorce in November 1994, alleging in his complaint that the child was born of the marriage. Appellee obtained a restraining order preventing appellant from leaving the state with the minor child. In her answer to the

divorce complaint appellant admitted that the child was born of the marriage. After a temporary hearing the chancellor awarded joint custody of the child to the parties.

In December 1994, the parties reconciled and lived together until April 1995 when appellant abruptly left appellee and took the child with her to California. Appellee obtained an emergency order granting custody of the child to him. On the strength of the court order, appellee went to California and brought the child back to Arkansas. Appellant then retained counsel and filed a motion for paternity testing, alleging that appellee was not the child's father. The results of the paternity test, filed of record on July 20, 1995, excluded appellee as the biological father.

Appellant then filed a motion to dismiss all child custody and visitation issues from the divorce action, based on the paternity-test results. Appellee objected to the admissibility of the paternity test, asserted that he stood *in loco parentis* to the child, and argued that public policy prevented appellant from bastardizing the child. Appellee also asserted that he relied on appellant's representations that he was the father of the child, and that appellant should be estopped from challenging the paternity of the child. The chancellor overruled appellee's objection to the admissibility of the paternity test. The court awarded custody of the child to appellant and allowed testimony on the issue of appellee's rights to visitation.

Following the hearing, the chancellor found that appellee stood *in loco parentis* to the child and found that it was in the child's best interest to award appellee five weeks of visitation per year, as well as phone visitation. Appellant appeals from that judgment, asserting that the chancellor erred in denying appellant's motion to dismiss all issues regarding custody and visitation with the child, and that the chancellor erred in finding that appellee stood *in loco parentis* to the child and was entitled to visitation. Appellee filed a cross-appeal, arguing that the chancellor erred in ordering paternity testing pursuant to Ark. Code Ann. § 9-10-104 (Repl. 1991), that the chancellor erred in refusing to find appellant/cross-appellee estopped to deny appellee/cross-appellant's paternity of a minor child born during the parties' marriage, and that the chan-

cellor erred in requiring that appellee/cross-appellant prove the natural mother unfit in order to prevail and receive custody of the minor child to whom appellee/cross-appellant stood *in loco parentis*.

## Appellant's Appeal

■ Appellant argues that the trial court erred in refusing to dismiss the custody and visitation issues from the divorce proceeding once the paternity testing excluded appellee as Edward III's biological father. Chancery cases are reviewed *de novo*, but a chancellor's findings will not be disturbed unless they are clearly against the preponderance of the evidence. *Schwarz v. Moody*, 55 Ark. App. 6, 928 S.W.2d 800 (1996).

The chancellor did not err in denying the motion to dismiss. We have previously addressed the issue of stepparent visitation. In *Riddle v. Riddle*, 28 Ark. App. 344, 775 S.W.2d 513 (1989), we considered whether a stepfather should be granted visitation rights with his stepson. When the parties married, the wife had a child outside the marriage. The parties later had a child during the marriage. *Id.* When the parties divorced, the chancellor found that it was in the best interest of the children for the older child to be placed with his natural mother, and for the child of the marriage to be placed with the husband, or his natural father. *Id.* The court also found that it would be in the best interest of the older child for the stepfather to be granted visitation. *Id.* We held that the circumstances in that case justified the order dividing custody and granting visitation rights to the stepfather. *Id.* at 350, 775 S.W.2d at 517.

■ The supreme court has also addressed the issue of whether a stepparent may be granted custody of a child. In *Stamps v. Rawlins*, 297 Ark. 370, 761 S.W.2d 933 (1988), the supreme court recognized that while there is a preference for the natural parent in custody matters, a stepparent may be awarded custody of a minor child in certain circumstances. These holdings show that the chancellor's decision to deny the motion to dismiss was not clearly erroneous.

■ ■ Appellant also contends that the chancellor erred in finding that appellant stood *in loco parentis* to the minor child. We find no error in the chancellor's finding. Child custody cases cast a heavier burden upon the chancellor to utilize to the fullest extent all powers of perception in evaluating the witnesses, their testimony, and the children's best interests. *Schwarz, supra* (citing *Clark v. Reiss*, 38 Ark. App. 150, 831 S.W.2d 622 (1992)). *"In loco parentis"* is defined as "in the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities." BLACK'S LAW DICTIONARY 787 (6th ed. 1990). The supreme court has held that a stepmother stands *in loco parentis* to the minor child when the two live in the same home as mother and daughter. *Moon Distrib. v. White*, 245 Ark. 627, 434 S.W.2d 56 (1968) (citing *Dodd v. United States*, 76 F.Supp. 991 (W.D.Ark. 1948) and *Miller v. United States*, 123 F.2d 715 (8th Cir. 1942)).

■ The circumstances in this case warrant a finding of *in loco parentis*. Appellee lived in the same household with Edward III as his father, from October 1993 until November 1994, and from December 1994 until April 1995. Appellee believed that he was the father of the minor child, and both appellant and appellee represented appellee as the father of Edward III. During the pending divorce of the parties, appellant and appellee were granted joint custody of Edward III by the chancellor, and appellee later obtained legal custody by emergency order of Edward III when appellant left the state with the child. Appellee, at all relevant times during the marriage of the parties, was the only father the child ever knew. In *Baker v. Durham*, 95 Ark. 355, 129 S.W. 789 (1910), a case that determined whether a natural parent would be deprived of custody, the court stated:

> There may be other exceptional cases where the father, by reason of indifference to the welfare of his child and the lack of proper affection for it, has voluntarily relinquished these parental obligations, privileges and pleasures to other hands for so long that the court will refuse to disturb the associations and environments which his own conduct has produced, and will leave in status quo those whom he has thus permitted to stand *in loco parentis*.

*Id.*, 95 Ark. at 358, 129 S.W. at 791.

Appellant cited *Hendershot v. Hendershot*, 30 Ark. App. 184, 785 S.W.2d 34 (1990), in arguing that this court has specifically rejected the doctrine of *in loco parentis*. That argument is inaccurate. In *Nelson v. Shelly*, 268 Ark. 760, 600 S.W.2d 411 (Ark. App. 1980), we held that where the appellants had physical custody of the minor child for a period of time exceeding one year, where appellants were the only parents the child had any knowledge of, and where the natural mother gave the appellants written consent to adopt the minor child, the appellants stood *in loco parentis* to the child. We have recognized the doctrine of *in loco parentis* in past precedent and reacknowledge its validity today. The chancellor's finding that appellee stood *in loco parentis* to Edward III is affirmed.

### Appellee's Cross Appeal

Appellee/cross-appellant raises as his first assignment of error that the chancellor erred in ordering paternity testing pursuant to Ark. Code Ann. § 9-10-104 (Repl. 1991) under the circumstances of this case. Appellee cited *Thomas v. Pacheco*, 293 Ark. 564, 740 S.W.2d 123 (1987), in arguing that there is a strong presumption in Arkansas that a child born during the marriage is the legitimate child of the parties to that marriage. This citation of the law is correct; however, this presumption is rebuttable only by the strongest type of conclusive evidence. *Id.* The paternity test conducted in this case satisfied that requirement. Arkansas Code Annotated § 9-10-104 states:

Petitions for paternity establishment may be filed by:

(1) A biological mother;

(2) A putative father;

(3) A person for whom paternity is not presumed or established by court order; or

(4) The Office of Child Support Enforcement of the Revenue Division of the Department of Finance and Administration.

There is no provision in this statute that prevented the chancellor from ordering the paternity testing in this case. In *Richardson v. Richardson*, 252 Ark. 244, 478 S.W.2d 423 (1972), the trial court

ordered a paternity test during a divorce hearing between the parties. The chancellor found, from the results of the test, that the husband was not the father of the child, thus bastardizing the child. *Id.* The supreme court upheld the use of paternity testing even though the child was born during the marriage. *Id.* The trial court did not err in ordering the paternity testing.

■ Appellee also argues that the chancellor erred in refusing to find appellant estopped to deny appellee's paternity of a minor child born during the marriage. He contends that the doctrine of *res judicata* should bar relitigation of the paternity issue and should prevent appellant from denying the paternity of a child born during the marriage. Under the doctrine of *res judicata*, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or her privies on the same claim or cause of action. *Scallion v. Whiteaker*, 44 Ark. App. 124, 868 S.W.2d 89 (1993). The doctrine of collateral estoppel, or issue preclusion, bars the relitigation of issues of law or fact actually litigated by the parties in the first suit. *Id.*

Appellee's argument is not persuasive because there has been only one action in this case: the divorce action in which the issue of paternity was raised. In Arkansas, the parents of the minor child are bound by the doctrine of *res judicata* when the issue of paternity has been litigated in a prior action between them. *Id.* The trial court correctly found that appellant was not estopped from challenging the paternity of the minor child.

■ ■ Finally, appellee contends that the trial court erred in requiring him to prove appellant unfit in order to prevail on the custody issue, where he stands *in loco parentis* to the minor child. We have consistently held that in child custody cases, the paramount consideration is the welfare and best interest of the child. Ark. Code Ann. § 9-13-101 (Repl. 1993); *McKee v. Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983). We also recognize that there is a preference for the parent above all other custodians. *McKee, supra*; *Watts v. Watts*, 17 Ark. App. 253, 707 S.W.2d 777 (1986). In *Baker v. Durham, supra*, the supreme court stated:

> [A]s between the parent and the grandparent, or anyone else, the law prefers the former unless the parent is incompetent or unfit, because of his or her poverty or depravity, to provide the physical comforts and moral training essential to the life and well being of the child. It must be an exceptional case where the evidence shows such lack of financial ability or such delinquencies in character on the part of the [parent] as to imperil the present and future welfare of his child before a court of chancery will deprive him of the duty and privilege of maintaining and educating his child, and of the pleasure of his companionship. *See Wofford v. Clark*, 82 Ark. 461, 102 S.W. 216 (1907).

*Id.*, 95 Ark. at 358, 129 S.W. at 791 (*quoted in McKee, supra.*) In *Stamps v. Rollins, supra*, a stepfather sought custody of his five-year-old stepson. The court held that the preference for the natural parent in custody matters must prevail, unless it is established that the natural parent is unfit. *Id.* (citing *Goins v. Edens*, 239 Ark. 718, 394 S.W.2d 124 (1965); *Hancock v. Hancock*, 198 Ark. 652, 130 S.W.2d 1 (1939); *Loewe v. Shook*, 171 Ark. 475, 284 S.W. 726 (1926)). The chancellor's ruling on this issue is not clearly erroneous.

Affirmed.

ROBBINS, C.J., and ROAF, J., agree.