### HOLMES *v.* COLEMAN.

4-4860

Opinion delivered December 13, 1937.

*John C. Sheffield,* for appellants.

*W. G. Dinning,* for appellees.

SMITH, J.   This appeal involves the right to the care and custody of Billy Joe, the seven-year-old daughter of Louis and Betty Coleman.   In addition to this child, the Colemans are the parents of four other daughters, two of whom are now married and have homes of their own.   T. B. and Ada Mae Holmes, his wife, are childless.   The Colemans and the Holmes were near neighbors and good friends when the child, Billy Joe, was born.   Mrs. Coleman was suffering from nephritis when the child was born, and it was decided, about five or six weeks after its birth, that Mrs. Coleman should be taken from her country home to Helena and placed in a hospital there for treatment.   Mrs. Holmes very graciously agreed to take care of the baby during its mother's absence.   There is no suggestion that there was any intention to give the baby to Mrs. Holmes. Mrs. Coleman was unable to give the child the attention, upon her return from the hospital, which her attending physician thought it should have, and the doctor suggested that Mrs. Holmes keep the baby for a while longer. Mrs. Coleman testified that she was so appreciative of and so grateful for the service rendered by Mrs. Holmes that she hesitated to request the return of the baby, as she thought it would finally be returned to her.   This condition continued until the baby was about three years old, when Mr. Holmes asked permission to legally adopt the child.   Mr. Coleman refused to grant this request, but permitted the child to remain with the Holmes. Mrs. Coleman testified that she asked Mrs. Holmes in 1932 to give her back the child, and that while she had no

money to pay for service which had been rendered the child she would be willing to go down on her knees and thank her and beg for the return of the child. Mrs. Coleman testified also that on several occasions she sent one or the other of her older daughters to bring the child home, but the request for its return was refused upon one pretext or another, but that she continued to hope and expect that the child would be returned to her without litigation.

It was shown on behalf of Mr. and Mrs. Holmes that the child suffered from colitis during the first year of its life, and required much attention, the giving of which tied the heartstrings of the Holmes closely about the baby. They paid its doctor's bills, and developed the baby into a normal child, and it is now, as both the natural and foster mothers described it, "A sweet little thing." The Colemans gave the child a few clothes, but it does not appear to have been in need of anything which was not supplied. The Colemans did buy the books used by the child in its first year at school. All other expenses appear to have been paid by the Holmes, and a number of their neighbors testified as to the devotion of the Holmes to the child.

There is no question in this case about the moral fitness of either the natural or the foster parents to properly rear the child. They are all described by their neighbors as "Good people." It is probably true that the Holmes are in position to give the child better advantages; but this question will not be considered unless and until it be established that its parents should be denied its custody. The natural parents will not be deprived of their child because some other person is willing and able to give it better advantages.

Courts are very reluctant to take from the natural parents the custody of their child, and will not do so unless the parents have manifested such indifference to its welfare as indicates a lack of intention to discharge the duties imposed by the laws of nature and of the state to their offspring suitable to their station in life. When, however, the natural parents so far fail to dis-

charge these obligations as to manifest an abandonment of the child and the renunciation of their duties to it, it then becomes the policy of the law to induce some good man or woman to take the waif into the bosom of their home, and when they have done so and, through their attentions to it, have learned to love it as if it were their very own child, this bond of affection will not then be severed although the natural parent may later repent his breach of the laws of nature and of the state and offer to resume the duties and obligations which he should never have ceased to perform.

The briefs of opposing counsel cite the numerous cases on this subject which have come before this court regarding controversies over custody of infant children between parents and others, in some of which the child was awarded the parents, while in others that relief was denied. We have summarized the effect of these cases, and have pointed out the rule which controlled their decision, in the application of which the custody of the child was in some cases awarded to the parents, while in others that relief was denied.

We have here the judgment of the circuit judge awarding the custody of the child to its natural parents, and due effect must be given to that finding.

In the case of *Washaw* v. *Gimble*, 50 Ark. 351, 7 S. W. 389, Chief Justice Cockrill said: "The circuit judge had the parties, the witnesses and the child before him, and was charged with the exercise of a sound discretion in disposing of the question." This was said after a review of the law of the subject of the award of custody of an infant.

We are unable to say that the circuit judge has, in this case, abused the discretion which abided in him. There was no gift of the child in this case. Indeed, Judge Cockrill said, in the case just cited, that "A father cannot, by a mere gift of his child, release himself from the obligations to support it or deprive himself of the right to its custody. Such agreements are against public policy, and are not strictly enforceable."

Nor was there any abandonment of the child by its natural parents. Mrs. Coleman requested its return on several occasions, and Mr. Coleman definitely refused to consent to its adoption by Mr. Holmes when the child was only three years old. The Colemans have waited longer than they should have done in forcing the matter to an issue, but their delay is explained, and to some extent excused, by their statement that they continued to hope and expect that the child would finally be returned to them without litigation.

There is a circumstance in this case which cannot be ignored similar to the one which was given much weight and effect in determining the court in the Washaw case, *supra*, to restore the custody of the child there in dispute to its natural parents. This is, that, by allowing the parents to keep their child, she will be given the association of her sisters, which already has been too long severed. This decision will inflict upon the foster parents and upon the child itself as well, poignant suffering, which all must regret, a feeling fully shared, no doubt, by the Colemans themselves; indeed, this was one of the reasons assigned by them to excuse their delay in forcing the issue now decided.

The judgment of the circuit court awarding the custody of the child to its natural parents is correct, and it is, therefore, affirmed.