RAYBURN *v.* RAYBURN.

5-1995                                          332 S. W. 2d 230

Opinion delivered February 22, 1960.

*George F. Edwardes,* for appellant.

*Shaver, Tackett & Jones,* for appellee.

JIM JOHNSON, Associate Justice. This appeal arises from an award of custody of a minor child. Appellant, Harvey Elmo Rayburn, Jr., originally instituted this suit against appellee, Barbara Rayburn in Chancery Court seeking a divorce and the custody of his infant daughter.

At the time the complaint was filed appellant was serving in the armed forces of the United States and a portion of the case was tried while he was still in the service. The divorce feature of the case was eliminated because the parties became reconciled for a brief interlude. Appellant proceeded with the child custody feature of the case. It was developed that he had been honorably discharged from the Military Service and had a practical and adequate plan worked out whereby he could take care of, nurture and rear his infant child with the aid of an aunt, Mrs. Guy Benton, who is a highly respectable woman.

It was further developed by the uncontradicted evidence that the mother of this child had neglected it during illness; that her careless indifference toward the child had resulted in maternal criticism from her own family. She admitted that she had been arrested and confined in jail, and the entire record reflects that this mother was not only an indifferent and capricious mother but an incompetent one and totally unworthy of being placed in the custody and control of an infant daughter.

After the issues were so resolved a plea of intervention was filed by Ellis Wayne Lummus and Patsy Ruth Lummus, childless cousins of appellee. After a lengthy hearing, the Court awarded intervenors custody of the child. From such award comes this appeal.

On trial *de novo* we find the record reflects that on September 22, 1958, the Chancellor awarded temporary custody of the child to intervenors-appellees after finding the child was being neglected in the home of its grandmother (mother of appellee). This temporary placement was made while appellant was still in the armed forces of his country. Before the final hearing appellant was honorably discharged from the military service and had a practical and adequate plan worked out whereby he could take care of, nurture and rear his infant child with the aid of an aunt with whom he lived and who had been almost a mother to him. Her age is less than 50 and according to voluminous undisputed testimony she is a highly respectable Christian lady who

owns a fine home and is desirous of assisting appellant and his little daughter in any way she can.

Intervenors-appellees retained temporary custody of the child until the latter part of January 1959 at which time the Court awarded them permanent custody, stating:

"The Court chose to place the child in the care and custody of these intervenors because there was ample, wholesome evidence showing to the Court that the Lummus home was a good Christian home, that they regularly attend church, that they are a young married couple and have no children in their home, that they have built them a modern, suitable home in which to keep the child and rear her, and that Mr. Lummus has had a good job with the Red River Arsenal for several years; that it is a well-established home, that the child is adjusted and has shown marked improvement in her growth and health since she has been staying in said home, and that it is highly advantageous and to the best interests and welfare of the child that she be kept in this home permanently . . ."

It is true that intervenors-appellees performed their duties as temporary foster parents of this little girl in a commendable manner. From the record there can be no doubt but that they are a good, kind, young couple and more than deserving of the confidence the Chancellor placed in them. However, the record reflects that there is nothing to prevent this fine couple from having a family of their own in the future and they have demonstrated in this case that they are deserving of all the wonderful blessings that may come their way. They will make exceptional parents. Possibly for the immediate present this young couple can do more for the child involved in this litigation than her natural father, assisted by his blood aunt; and possibly the removal of this young child from their loving care may result in temporary adversity to both the child and the foster parents. If so, we can only conclude that the longer the separation is put off the harder it will be for all concerned. Certainly reasonable visitation will be extended by the father. The test as to custody between a natural parent and a third

person has never been based solely upon who can do the most for the child. If this were the rule, there would be nothing to prevent a wealthy couple from selecting from among the children of the poor a child and demanding custody based on the rule. Fortunately, for the sake of a harmonious society, such is not the law.

The record reflects that appellant is a clean, honorable young man devoted to his child, accustomed to labor and dedicated to duty. He doesn't drink or smoke and attends church regularly. Certainly there is nothing uncontradicted in the record to indicate that he is not a fit and proper person to have the custody of his child, his own flesh and blood. A natural parent's right to custody of a child is paramount to all others unless the parent is proved to be incompetent or unfit. See: *Cook* v. *Haynie*, 230 Ark. 174, 321 S. W. 2d 201; *Holmes* v. *Coleman*, 195 Ark. 196, 111 S. W. 2d 474; *Loewe* v. *Shook*, 171 Ark. 475, 284 S. W. 726; *Baker* v. *Durham*, 95 Ark. 355, 129 S. W. 789.

Therefore, the decree is reversed and the cause is remanded with directions to enter an order awarding the custody of Debbie Ann Rayburn to her father, the appellant herein.