SLIP OPINION

# ARKANSAS COURT OF APPEALS

DIVISION I
No. CV-14-141

|  |  |
|---|---|
| KARINA GUERRERO TORRES AND CARLOS ROCHA <br><br> APPELLANTS <br><br> V. <br><br> THERESA JONES <br><br> APPELLEE | Opinion Delivered November 12, 2014 <br><br> APPEAL FROM THE HOWARD COUNTY CIRCUIT COURT [NO. PR-2006-46] <br><br> HONORABLE TED CAPEHART, JUDGE <br><br> AFFIRMED |

## JOHN MAUZY PITTMAN, Judge

Appellants, Karina Torres and Carlos Rocha, appeal from an order denying their petition to terminate a 2006 order that granted guardianship over appellants' child to appellee, Theresa Jones. Appellants argue that the 2006 guardianship order was improperly entered because various statutes were not complied with; that the trial court applied the guardianship statute in an unconstitutional manner by ignoring appellants' rights, as fit parents, to the care of their child by requiring them to prove that termination of the guardianship was in the child's best interest; and that the trial court erred in not terminating the guardianship because they did not partially abandon the child, as found by the court, and because they demonstrated that the reason for the guardianship no longer existed. We affirm.

We review guardianship proceedings de novo, but we will not reverse a finding of fact by the circuit court unless it is clearly erroneous. *Graham v. Matheny*, 2009 Ark. 481, 346 S.W.3d 273. A finding is clearly erroneous when, although there is evidence to support it,

SLIP OPINION

the reviewing court is left with a definite and firm conviction that a mistake has been made. *Id.* When reviewing the proceedings, we give due regard to the opportunity and superior position of the probate judge to determine the credibility of the witnesses. *Id.*

Viewed in light of this standard, the record shows that both of the appellants, and appellee's husband (appellant Rocha's brother), are Mexican citizens residing illegally in the United States. Appellee is an American citizen employed as a translator. Appellants arrived in the United States in January 2000. Appellee developed a close relationship with appellants and was sheltering them in her own home at the time that appellant Karina gave birth to C.R. in October 2000. Appellee regarded appellants and C.R. as her children, staying extremely involved with the family. C.R. moved in with appellee when he was four years old and has resided there since, with appellee making medical and educational decisions regarding his care. This was done with the consent of appellants, and a formal guardianship order was entered in 2006. The stated purpose of the order was to provide proper care for C.R. because his parents did not speak English, and its duration was to be until C.R. reached the age of eighteen. The parties proceeded under this order amicably until 2013, when they had a falling out and appellants filed a petition to terminate the guardianship.

During the seven years that he resided with appellee, C.R. developed a parent–child relationship with appellee, whom he calls Mom. Giving deference to the trial court's credibility assessments, the record shows that appellants remained in contact with C.R., coming to appellee's home on holidays and attending C.R.'s sporting events, but their relationship with him, although familial, was not parental. In contrast, appellants' relationship

with their younger son, E.R., was parental; E.R. remained in their home, was raised and cared for by them, and communicated with them in Spanish. In contrast, C.R. has been living in another town with appellee; he does not speak Spanish, and appellants do not speak English.

*Collateral Attack on 2006 Guardianship Order*

Appellants advance several arguments constituting collateral attacks on the 2006 guardianship order. That order was not appealed from, and appellants' arguments were not made below or ruled on by the trial judge in the current proceeding. Generally, judgments are not subject to collateral attack unless they are void on the face of the record or are issued by a court lacking jurisdiction. *Rose v. Harbor East, Inc.*, 2013 Ark. 496, 430 S.W.3d 773. They cannot be collaterally attacked for mere error or irregularity. Here, there is no question that the 2006 court's jurisdiction was proper, and the arguments, presented for the first time on appeal, are addressed to alleged errors or irregularities that depend upon findings of fact that were never made below. Because the court issuing the guardianship had jurisdiction to enter such an order, and because the 2006 guardianship order is not void on the face of the record, the arguments collaterally attacking that order are not properly before us.

*Unconstitutional Application of Guardianship Statute*

Appellants advance several constitutional arguments for the first time on appeal. Arkansas appellate courts do not consider arguments, even constitutional ones, that are raised for the first time on appeal. *Hooks v. Pratte*, 53 Ark. App. 161, 920 S.W.2d 24 (1996). In any event, appellants' arguments are without merit because they are based on a false premise, *i.e.*,

SLIP OPINION

that the trial court ignored the presumption that fit parents are entitled to the care, control, and custody of their children and placed upon them the burden of showing that termination of the guardianship was in the child's best interest. The trial court clearly did not do so. The parties agreed during opening statements that the burden was on the parents to show that the reason for the guardianship no longer existed and that, if such were shown, the burden would shift to the guardian to show that termination of the guardianship was contrary to the ward's best interest. This is in accord with both Arkansas and federal law, *see In re Guardianship of S.H.*, 2012 Ark. 245, 409 S.W.3d 307, and it was demonstrably employed by the trial court in its lengthy ruling from the bench, where it acknowledged that the parents were the presumptive custodians and expressly found that appellants failed to meet their burden of proving that the guardianship was no longer necessary. The trial court, in the disjunctive, also opined that termination of the guardianship would be contrary to the best interest of the ward, but it carefully avoided saying that the parents had the burden of proof on best interest.

*Refusal to Terminate Guardianship*

Here, appellants argue that the trial court erred in finding that the reason for the guardianship still existed and that they abandoned their parental roles with respect to C.R. We find no clear error. With respect to the former, the stated reason for the guardianship in the 2006 order was that the parents were unable to speak English, and they are still unable to speak English. Even assuming the truth of appellants' argument that translators are more generally available now than they were in 2006, the problem is compounded, rather than lessened, because in the interim appellants have failed to ensure that C.R. learned Spanish, and

4

they therefore cannot effectively communicate with him in the home, where official translators are not provided.

With respect to the latter, we cannot say that the trial court erred in finding that appellants abandoned their parental roles. Again, appellants' inability to communicate with the child is an outstanding example. In addition, appellants clearly allowed parental bonds of affection to develop between C.R. and appellee and for appellee to take on the role of parent. This has long been recognized to be a crucial factor in dissipating the presumption in favor of care, control, and custody by a parent:

> Courts are very reluctant to take from the natural parents the custody of their child, and will not do so unless the parents have manifested such indifference to its welfare as indicates a lack of intention to discharge the duties imposed by the laws of nature and of the state to their offspring suitable to their station in life. When, however, the natural parents so far fail to discharge these obligations as to manifest an abandonment of the child and the renunciation of their duties to it, it then becomes the policy of the law to induce some good man or woman to take the waif into the bosom of their home, and when they have done so and, through their attentions to it, have learned to love it as if it were their very own child, this bond of affection will not then be severed, although the natural parent may later repent his breach of the laws of nature and of the state and offer to resume the duties and obligations which he should never have ceased to perform.

*Holmes v. Coleman*, 195 Ark. 196, 198-99, 111 S.W.2d 474, 476 (1937); *see also Lloyd v. Butts*, 343 Ark. 620, 37 S.W.3d 603 (2001).

Affirmed.

GLADWIN, C.J., and WYNNE, J., agree.

*Cross, Gunter, Witherspoon & Galchus, P.C.*, by: *Misty Wilson Borkowski* and *Abtin Mehdizadegan*, for appellants.

*Jason Horton Law Firm*, by: *Jason Horton*, for appellee.