## 1575-14

COURT OF CRIMINAL APPEALS OF TEXAS

AUSTIN TEXAS

ORIGINAL

PD-1575-14

BLAS HERNANDEZ,JR., Appellant

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 03 2015

Abel Acosta, Clerk

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 40th District Court

Ellis County, Texas

Trial Court Cause No.36567CR

FILED IN
COURT OF CRIMINAL APPEALS

MAR 06 2015

Abel Acosta, Clerk

## PETITION FOR DISCRETIONARY REVIEW (PDR)

1

# TABLE OF CONTENTS

COVER SHEET                                        1
TABLE OF CONTENTS                                  2
INDEX OF AUTHORITIES                               3
STATEMENT REGARDING ORAL ARGUMENT                  4
STATEMENT OF THE CASE                              5
STATEMENT OF PROCEDURAL HISTORY                    6
GROUNGS FOR REVIEW                                 6
ARGUMENT                                           6
ARGUMENT ON GROUND ONE                             6
"                           "                      7
"                           "                      8
"                           "                      9
"                           "                      10
ARGUMENT ON GROUND TWO                             10
"                           "                      11
"                           "                      12
ARGUMENT ON GROUND THREE                           12
"                           "                      13
"                           "                      14
PRAYER FOR RELIEF                                  14
UNSWORN DECLARATION                                15
CERTIFICATE OF SERVICE                             15

# INDEX OF AUTHORITIES

TEX.C.CRIM.P. ART. 35.03 .................................................... 8

Jasper v. State, 61 S.W.3d 413 .............................................. 9

Butler v. State, 830 S.W. 2d 125 ........................................... 9

TEX.C.CRIM.P. ART.35.16, 35.16(a), 35.19 ........................ 9

TEX.GOVN'T CODE §62.110 (c) .......................................... 9

Rule App. Pro. Rule 44.2(b) ................................................. 9

Gray v. State, 174 S.W. 3d 794 ............................................ 9

28 U.S.C.A. § 1861 ............................................................. 9

U.S. v. Carter, 568 F.2d 453 ................................................ 9

TEX.TRANSPORTATION CODE §724.012 ........................... 10

Chapman v. California, 386 U.S. 18, 23-24 ....................... 10

Mapp v. Ohio, 367 US 643, 654 ......................................... 10

Weeks v. U.S., 232 U.S. 383 ............................................... 10

U.S. v. Wade, 388 US 218 .................................................. 10

Untied State v. Brown, 482 F.2d 1216 ............................... 11

United States v. Lane, 591 F.2d 261 .................................. 11

Basden v. State, 897 S.W.2d 319 ....................................... 12

TEX.C.C.P. ART 42.08 ........................................................ 12

In re: Russell, 60 S.W. 3d 875 ............................................ 13

Rhodes v. State, 175 S.W. 3d 348 ...................................... 13

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant in this case hereby waives oral argument. The issues within this Petition can be viewed by reviewing the records of the prior proceedings. Should this Court be of the opinion justice would be better served by granting oral argument, Appellant agrees with this Court's opinion thereto.

## STATEMENT OF THE CASE

Appellant, was convicted of driving while intoxicated, third or more offense, in the Trial Court out of Ellis County, Texas, 40th District Court, Trial Court Cause No.36567CR. The jury assessed punishment at confinement for life. The trial court ordered the life sentence in this case to run consecutively to the life sentence that Appellant was on parole for at the time of trial. In Appellant's Appeal Brief, the counsel for Appellant asserted three points of error on appeal. The first being that the court erred when it excused a juror, Second for the court's denial of my motion to suppress evidence, Third for sentencing me to serve consecutive life sentences.

## STATEMENT OF PROCEDURAL HISTORY

The Opinion in this case was handed down on October 9, 2014. There was no motion for rehearing filed in this case.

## G R O U N D S   F O R   R E V I E W

**GROUND ONE:** DID THE TRIAL COURT ABUSE ITS DISCRETION WHEN IT DISMISSED JUROR NUMBER THREE?

**GROUND TWO:** IS TEXAS TRANSPORTATION CODE §724.012 CONSTITUTIONAL?

**GROUND THREE:** DID THE TRIAL JUDGE ABUSE HIS DISCRETION BY STACKING APPELLANT'S SENTENCE UNDER TEX.C.CRIM.P. ART.42.08?

## A R G U M E N T

**ON GROUND ONE:** Appellant contends in his first point of error that the trial Court erred when it excused Eva Sauceda from the jury. Appellant's trial attorney told the trial court that Appellant did not have the jury cards in his possession during voir dire (.R.R. Volume 3, Page 8, Lines 21-25). Furthermore, Appellant's trial attorney told the trial Court that the jurors were chosen by him, not by Appellant, who was not even consulted, and had no kind of for knowledge of the information. Appellant was

not aware that the juror, Mrs. Sauceda, was a relative of the long time family friends contacted by Appellant's mother (R.R. Volume 3, Page 9, Lines 1-9).

The message then stated that Leo and Carmen Sauceda need to come to court and that Appellant's mother needed to inform them to do so (R.R. Volume 3, Page 9, Lines 10-18). The Court then determined that the State was seeking to excuse juror Sauceda from the panel. The Appellant objected (R.R. Volume 3, Page 10, Lines 4-15). The Court then determined that an interpreter, who was licensed, had been in the courtroom earlier and was possibly still available (R.R. Volume 3, Page 11, Lines 10-23).

The Court then had an in-camera hearing in the chambers with juror Sauceda. The only other person present was the Court Reporter (R.R. Volume 3, Page 11, Lines 24-25, Page 12, Lines 1-25). Mrs. Sauceda stated that she was juror number 3. She also stated to the Court in the chambers her husband answered a knowck on the door and saw a young woman with three children who was looking for Eva Sauceda. She stated that the woman said that her brother wanted to make sure that Eva Sauceda was present tomorrow (R.R. Volume 3, Page 13, Lines 2-25).

The juror could not say for sure whether or not she believed that the person who visited her was the sister of the Appellant. It seemed to her that this person was a relative of the Appellant but she was not sure. But she also said that her last name was Sauceda and her husband had lived in that house his whole life. Her husband's family knows a lot of people (R.R. Volume 3, Page 14, Lines 1-20). The witness then asked the Judge if the jury information cards, which had been copied, had personal information

7

on them. The Court verified that it would have included her husband's name (R.R. Volume 3, Page 15, Lines 4-25, Page 16, Lines 1-2).

The juror stated she did not know Appellant and did not know any member of his family (R.R. Volume 3, Page 16, Lines 7-14). She stated her husband had not seen her when he came to the door and hand not seen Appellant in a long time and had no connection with Appellant or his family (R.R. Volume 3, Page 17, Lines 9-25). The Court went over with the juror the range of punishment and he asked her if she felt any kind of expectation, concern, or any pressure or intimidation. **She replied that** the night before she had been afraid but on the day in question she was more at ease. She said she assumed that Appellant was incarcerated because he came in with an officer but she stated that she had two children.

Even after all the Court's efforts to lead the juror into saying something which would warrant the Court's excusing her, the juror still made the following statement: **When the Court asked her if she thought she should be excused she stated that she didn't mind serving** (R.R. Volume 3, Page 19, Lines 5-25, Page 20, Lines 1-8).

The Court all but told the juror that all she had to say to be excused is this and that. This is misleading the juror and in doing so, violating Appellant's Constitutional rights.

Article 35.03 of the Texas Code of Criminal Procedure provides that the court shall hear and determine excuses offered for not serving as a juror and that," if the court considers the excuse

8

sufficient," the court shall discharge the prospective juror. Jasper v. State, 61 S.W. 3d 413, 423 (Tex. Crim. App. 2001).

The Appellant contends that the juor in question never requested the Court to remove her from the jury. She even stated that she didn't mind serving on the jury, as a juror. The Legislature has only provided for three instances in which prospective juror is disqualified from jury service abinitio; all other prospective jurors are presumptively qualified to serve as jurors, although they may, in fact, harbor disabilities. Vernon's Ann. Tex. C.C.P. Art. 35.16, 35.16(a), 35.19. Butler v. State, 830 S.W. 2d 125.

The Appellant contends the Trial Judge error in excusing veniremember for reasons not supported in the three instances the Legislature provided for in disqualifying a juror, in violation of ststute, and in doing so, the act was not harmless. The violation of statute affected composition of venire, and thus, subverted in some fashion the process of assembling the venire. V.T.C.A. Governmet CODE § 62.110 (c); Rules App. Proc., Rule 44.2(b) Gray v. State, 174 S.W. 3d 794, rehearing en banc denied, and petition for discretionary review granted, reversed 233 S.W. 3d 295, review dismissed as moot, on remand 2008 WL 5751952 PDR dismissed as untimely filed.

Chief policy of Federal Jury Selection Act is to ensure random selection of jurors on objective standards. 28 U.S.C.A.§ 1861. U,S, V. Carter, 568 F. 2d 453.

Appellant would argue to this Honorable Court Of Criminal Appeals that the Trial Court was in error in excusing over objection juror number three, Eva Saucela, because Eva Sauceda had not been influenced and she was not afraid as a result of possibly having an encounter with a relative of Appellant.

ON GROUND TWO: Appellant would contend the the Texas Transportation Code § 724.012(b)(3)(B) is unconstitutional. The mandatory blood draw of Appellant's blood without his consent violates the Appellant's rights to be free of illegal search and seizure pursuant to the U.S. Constitution Amendments 4,8,and 14. Forcing Appellant to provide blood against his will violates Appellant's rights. There was no warrant signed by a Judge authorizing the blood to be drawn from Appellant and therefore, the draw was illegal, as is to Texas ststute mandating it. Also violated was Appellant's 5th amendment right under the U.S. Constitution.

Appellant would assert evidence obtained illegally my not be introduced at trial to prove guilt otherwise reversal is due. Chapman v. California, 386 U.S. 18, 23-24 (1967), This is part of the judicially created exclusionary Rule which applies to state curts for Fourth Amendment violations through Mapp v. Ohio, 367 US 643, 654-55 (1961), and to the federal government through Weeks v. U.S., 232 US 383, 398 (1914). The rule also applies to evidence obtained in violation of the Fifth Amendment as well. U.S. v. Wade, 388 US 218, 237-39 (1967); Messiah v. U.S., 377 US 201, 206-07 (1964).

Appellant would further assert that under the fruit of the

10

poisonous tree doctrine the blood taken from Appellant should not have been used at trial at all. The Texas controversial law allowing a mandatory warrantless blood draw without consent is unconstitutional. This Court has already ruled in a 5-4 decision earlier this year that its unconstitutional. Therefore, anything after the constitutional violation should be void under said doctrine. Had there been no illegally obtaind evidence (blood) then there would be the issue of the state not being able to prove ALL elements of the offense charged.

Appellant would further assert that not only was the blood illegally drawn. The chain of custody was botched in many ways. This allowed for the evidence to be tampered with without answer. **United States v. Brown 482 F.2d 1226 (8th Cir. 1973); United States v. Lane, 591 F. 2d 961 (DC Cir. 1986).**

Evidence in this case had to be retested because of the move of Ms. Medina. The witness stated that the evidence was resubmitted to her lab on June 4th, 2012 (R.R. Volume 4, Page 19, Lines 2-13). The Appellant objected to the question and answer of the results to be given of the analysis for the reasons stated outside the presence of the jury. The Court overruled the objection (R.R. Volume 4, Page 20, Lines 6-13). The witness then testified that this result was 0.205 grams of alchol per 100 milliliters of blood. The witness then stated that the legal limit for intoxication in the State of Texas is 0.08 grams of alchol and that the blood analyzed in this case exceeded the legal limit in Texas (R.R.

11

Volume 4, Page 21, Lines 7-19).

**ON GROUND THREE:** The trial Court eroniously cumulated the sentence which was life, with the sentence Appellent was currently serving. The Texas Court of Criminal Appeals has explained that "[t]he obvious intent of Art 42.08(b) is to deter **inmates** from committing crimes **during their incarceration** and to more harshly punish those **inmates** who are not deterred." Basden v. State, 897 S.W. 2d 319, 321 (Tex.Crim. App. 1995). (emphasis added), Before the Legislature enacted Art. 42.08(b), inmates who committed a crime while serving a sentence **in the TDCJ-ID**, and were convicted of that crime while still serving their sentence, were often allowed to serve two sentences **concurrently**.

**HOUSE COMM. ON LAW ENFORCEMENT, BILL ANALYSIS, TEX. S.B. 186, 69th Leg. R.S. (1985)**. Inmates therefore, had no effective incentive to refrain from engaging in criminal conduct while serving their sentences, as they suffered no actual consequences(other than loss of good time) for their later crimes, because their subsequent sentence often ran concurrently with their original sentence. Id. The House Committee on Law Enforcement explained that it intended Art. 42.08(b) to provide inmates with a strong incentive to refrain from engaging in criminal conduct **WHILE SERVING A SENTENCE IN TDC.**

Art. 42.08 of the Texas Code Of Criminal Procedure does not specifically define the term "INMATE". The Tex.C.Crim.App. has, however, held that the plain meaning of the term " INMATE " is " a 'person confined to a prison, penitentiary, or the like,'"

12

In re Russell, 60 S.W. 3d 875, 877 (Tex.Cr.App. (2001) (quoting Black's Law Dictionary 788 (6th ed. 1990)).

Rhodes v. State, 175 S.W. 3d 348 (Tex.App. Hou. 2004); The literal language of Art. 4208 "While the defendant was an inmate in the institutional division" is subject to two possible interpertetions: it can require stacking only for offenses an inmate commits **while physically housed in the TDC**, or it could require stacking for any offense an **inmate** commits during the time he is an **inmate** processed into the institutional division, and actually serving a sentence in the institutional division, but who commits the offense in another location.

The trial Court abused its discretion by stacking Appellant's life sentence against the literal language of Art. 42.08 of the Texas Code of Criminal Procedure. This violates Appellant's rights under the United States Constitution Amendments 5,8,11,and 14.

After the jury returned its verdict of life during the punishment stage of the trial, the Court preceded to sentence Appellant. The Court sentenced Appellant serve life in prison with credit for 304 days previously served. Then, **without argument or discussion,** the Court stated that the sentence is going to be cumulative and it would run consecutively with the current life sentence that Appellant was released on parole for (R.R. Volume 5, Page 63, Lines 5-16). Appellant was not given any chance to argue

13

why the sentence should not be stacked or made cumulative. The Statute used to justify the stacking of Appellant's sentence was put in place to deter inmates from acts which the TDC, could not otherwise get a grip on by using removeal of good time. Its very clear what the Statute was put in place to do. This Court has further done pains,to make sure this is understood.

## P R A Y E R   F O R   R E L I E F

WHEREFORE, Appellant,respectfully moves this Honorable Court to see the harm caused by the many violations of Appellant's Constitutional Rights in this case at bar. Appellant is praying this Court will grant this Petition and revers and remand this case with orders for a new trial, or to order the charges be dismissed against Appellant. Should this Court not wish to do this for any reason, Appellant would respectfully move this Court to order a new punishment stage in the trial proceedings. Appellant requests any relief this Court may deem just in addressing the merits of this case, which Appellant may be entitled to by law, and/or to reach the ends of justice in this matter.

Respectfully submitted,

*Blas Hernandez Jr*
BLAS HERNANDEZ, JR.,#1956368
APPELLANT, PRO Se
ELLIS UNIT
1697 FM 980
HUNTSVILLE, TEXAS 77343

cc:bh/file

14

## UNSWORN DECLARATION

I, Blas Hernandez, Jr., swear under the penalty of perjury that the foregoing statements made in this PDR are true and correct to the best of my knowledge and understanding.

Executed on this the 24th day of February 2015.

_Blas Hernandez Jr_
BLAS HERNANDEZ, JR.
APPELLANT, PRO SE

## CERTIFICATE OF SERVICE

This is to certify that a true and correct original copy of the foregoing PDR has been mailed to the Clerk of the Texas Court of Criminal Appeals, and the State Prosecution Attorney, by U.S. Mail system, mailed on this the 27th day of February 2015.

_Blas Hernandez Jr_
BLAS HERNANDEZ, JR.
APPELLANT, PRO SE

15



In The

# Eleventh Court of Appeals

No. 11-12-00293-CR

## BLAS HERNANDEZ, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 40th District Court**
**Ellis County, Texas**
**Trial Court Cause No. 36567CR**

## MEMORANDUM OPINION

The jury convicted Blas Hernandez, Jr. of driving while intoxicated, third or more offense.[1] The jury assessed his punishment at confinement for life. The trial court ordered the life sentence in this case to run consecutively to the life sentence that Appellant was on parole for at the time of trial. Appellant asserts, in three points of error on appeal, that the trial court erred when it excused a juror, denied

---

[1] *See* TEX. PENAL CODE ANN. §§ 49.04, 49.09 (West Supp. 2014).

his motion to suppress evidence, and sentenced him to serve consecutive sentences. We affirm.

## I. *Evidence at Trial*

Kathleen Hoggatt testified that, around 4:00 a.m. on November 1, 2011, she was asleep in her home in Waxahachie, when she was awakened by a loud noise. Hoggatt went to the window and saw that someone driving a red pickup had crashed into her vehicle and was leaving the scene. After she called the police, Hoggatt went outside and found a case of beer in the front yard. Hoggatt also saw that her mailbox had been turned over, and she noticed that the impact of the crash had moved both her vehicle and her husband's vehicle.

Chris Eadler, an officer with the Waxahachie Police Department, testified that he was dispatched to the hit-and-run accident at Hoggatt's home on November 1, 2011. After Officer Eadler arrived at the scene, he noticed that Hoggatt's vehicle was badly damaged and that her husband's vehicle had been struck so hard that it had been pushed into the yard. Officer Eadler also observed that a brick mailbox had been knocked off its pedestal.

Officer Eadler immediately began searching for the hit-and-run driver in the area surrounding Hoggatt's home. Because Hoggatt reported that the driver left the scene traveling north, Officer Eadler searched for a vehicle with damage to its front and left side. Officer Eadler quickly encountered a red pickup with a broken headlight and a crushed front bumper. The bumper was pushed so hard into the pickup's front left tire that smoke was coming from the tire.

Officer Eadler caught up to the pickup, activated his overhead lights, and called for assistance. The pickup came to a stop, and Officer Eadler asked the driver to step out of his vehicle. Officer Eadler then identified the driver as Appellant and placed him under arrest. As Officer Eadler handcuffed Appellant, Officer Eadler noticed that Appellant's breath had a strong odor of alcohol, that his

2

eyes were bloodshot, that his speech was slurred, and that he had an unsteady balance.

Ron Turbeville, a sergeant with the Waxahachie Police Department, testified that he responded to Officer Eadler's call for assistance on November 1, 2011. Sergeant Turbeville stated that he recognized Appellant when he arrived at the scene and that, at that time, he was aware of Appellant's two previous driving while intoxicated (DWI) convictions. Based on Appellant's previous convictions, Sergeant Turbeville asked another officer to transport Appellant to the hospital for a mandatory blood draw.

Sergeant Turbeville took pictures of Appellant's pickup, and he noted that its condition indicated that it had recently been in a collision with another vehicle. The pickup's front left side was crumpled, and its left headlight was broken. The pickup's bumper was crushed into its left front tire, and it had a distinct smell of burning rubber. Sergeant Turbeville also noted that he found a partially consumed twelve-pack of beer inside the pickup.

Abe Partington, an officer with the Waxahachie Police Department, testified that he assisted Officer Eadler with Appellant's arrest. Officer Partington noticed that Appellant's breath had a strong odor of alcohol, that his eyes were bloodshot, and that his speech was slurred. Officer Partington was aware of Appellant's two previous DWI convictions, and based on those convictions, Officer Partington realized that a mandatory blood draw was required in this case. Officer Partington then transported Appellant to Baylor Medical Center. The camera in Officer Partington's patrol car recorded Appellant while he was inside the vehicle. On the recording, Appellant's speech is clearly slurred, and he admitted that he had consumed five beers.

After Officer Partington arrived at Baylor Medical Center, Appellant submitted to field sobriety tests in the hospital's parking lot. During the horizontal

3

gaze nystagmus test, Appellant displayed the maximum number of intoxication clues. Appellant also underwent the walk-and-turn test and the one-leg stand test. At the conclusion of the tests, Officer Partington determined that Appellant was "very intoxicated."

Officer Partington could not recall if Appellant agreed to or refused to provide a breath sample. On the police dash-cam video, Appellant initially appears to consent to a breathalyzer test, but later in the video, Appellant refuses to consent to take a breathalyzer test or consent to provide a blood sample. Officer Partington advised Appellant of the statutory warnings related to a refusal to provide samples and filled out form TLE-51.[2] The forms do not reflect that Appellant voluntarily provided a sample of his blood.

Ryan Smith, a phlebotomist at Baylor Medical Center, testified that she drew a sample of Appellant's blood on November 1, 2011. Smith noted that she signed the affidavit the police gave her at that time. Although the affidavit includes a section for notarization, that section was never completed. Chris Youngkin, a forensic scientist with the Texas Department of Public Safety, testified that he analyzed the blood sample taken from Appellant on November 1, 2011. Youngkin explained that the sample contained 0.205 grams of alcohol per 100 milliliters of blood, more than 2.5 times the legal limit.

The grand jury indicted Appellant with the offense of driving while intoxicated, third or more offense. Appellant pleaded "not guilty" to the charged offense, and the case proceeded to trial. At the start of the second day of trial,

---

[2]The TLE-51 form is an outdated form that was previously used to document a mandatory blood draw in accordance with Section 724.012(b)(1) of the Texas Transportation Code. TEX. TRANSP. CODE ANN. § 724.012(b)(1) (West 2011) (applicable to situations where the person arrested for DWI was involved in an accident and the arresting officer reasonably believes that, as a direct result of that accident, another individual has died, has suffered serious bodily injury, or has suffered bodily injury and been transported to a medical facility for treatment).

4

Appellant moved to suppress the results of his blood draw based on Officer Partington's use of the wrong form and Smith's incomplete affidavit. The State argued that the errors in the forms did not negate Officer Partington's statutory authority and duty to obtain a sample of Appellant's blood. The trial court denied Appellant's motion.

## II. *Issues Presented*

Appellant contends in three points of error that the trial court erred (1) when it excused Juror Eva Sauceda, (2) when it denied his motion to suppress evidence related to his blood alcohol level, and (3) when it ordered his life sentence in this case to run consecutively to the life sentence he was on parole for at the time of trial.

## III. *Standard of Review*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We give great deference to the trial court's determination of the historical facts that are supported by the record. *Guzman v. State*, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). We also give deference to the trial court's rulings on mixed questions of law and fact when those rulings turn on an evaluation of credibility and demeanor. *Id.* We review de novo the trial court's rulings that do not turn on an evaluation of credibility and demeanor. *Id.*

## IV. *Analysis*

### A. *Excused Juror*

Appellant contends in his first point of error that the trial court erred when it excused Eva Sauceda from the jury. We hold that Appellant waived this issue on appeal because he failed to object to the trial court's decision at the time it was made. *See* TEX. R. APP. P. 33.1(a)(1) (stating that "[a]s a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was

5

made to the trial court by a timely request, objection, or motion"). Even if Appellant had preserved this issue, we would hold that the trial court did not abuse its discretion when it dismissed the juror.

Article 35.03 of the Texas Code of Criminal Procedure provides that the court shall hear and determine excuses offered for not serving as a juror and that, "if the court considers the excuse sufficient," the court shall discharge the prospective juror. TEX. CODE CRIM. PROC. ANN. art. 35.03, § 1 (West 2006). The Court of Criminal Appeals has repeatedly held that a trial court has broad discretion over the process of selecting a jury and may excuse prospective jurors for good reasons. *Jasper v. State*, 61 S.W.3d 413, 423 (Tex. Crim. App. 2001); *Wright v. State*, 28 S.W.3d 526, 533 (Tex. Crim. App. 2000); *Black v. State*, 26 S.W.3d 895, 899 (Tex. Crim. App. 2000). This authority continues even after an individual juror has been sworn and exists until the entire jury is empaneled and sworn. *Wright*, 28 S.W.3d at 533.

After the jury had been selected but before it had been sworn, Sauceda informed the court that, around 7:30 or 8:00 p.m. the night before, a young woman knocked on the front door of Sauceda's home. The woman asked to speak with Sauceda, and after Sauceda arrived at the door, the woman said, "[M]y brother wants me to tell you to make sure you're there tomorrow." The woman identified her brother by name, and Sauceda and her husband realized that the woman was Appellant's sister. Sauceda's husband immediately told the woman that her behavior was illegal and asked her to leave.

When the trial court asked Sauceda if she felt any type of expectation, concern, fear, pressure, or intimidation, the following exchange took place:

> [SAUCEDA]: Yesterday, I was scared. Today, I woke up with a little bit more ease about the situation. But, I mean, I just don't understand how they could, you know, other than him looking over

the shoulder get my address and then - - I don't know if he was locked up, but I assume because he came in with the bailiff now. But - - and then relay that to someone that would come to my house. I have two children. That to me is - -

THE COURT: I understand. Ms. Sauceda, we don't want to put you or any juror in this county on any case, whether it's a criminal case, a civil case, a family law matter, in any form of fear or concern or intimidation. Do you think this is the kind of case where it might be best if we excused you from it?

[SAUCEDA]: Maybe so. I mean, I don't mind serving on it if that's what y'all need, but either way, I mean, I don't know.

THE COURT: Do you think it might alleviate some of your fear, frankly?

[SAUCEDA]: Yes, but I would like - - I would hope that it would be investigated, you know, to what he - - or what happened yesterday to someone to get away with - -

THE COURT: No, I assure you that it will be investigated. You mentioned you were scared yesterday in part because you have two children, in part because she came to your house and made contact, and there's a belief that she was related to the defendant in some form or fashion, correct?

[SAUCEDA]: Uh-huh.

THE COURT: And you mentioned you woke up this morning feeling a little bit better, but if you tell me you still possess a concern, if you possess some fear, I'm going to go ahead and excuse you.

[SAUCEDA]: Okay.

THE COURT: You just tell me.

[SAUCEDA]: Yes.

Sauceda clearly expressed some fear or concern to serving as a juror in this case, and the trial court reasonably believed that her apprehension could affect the

7

integrity of the trial. We hold that the trial court acted within its discretion when it released Sauceda from jury service. We overrule Appellant's first point of error.

*B. Compliance with Chapter 724 of the Texas Transportation Code*

Appellant argues in his second point of error that the trial court erred when it denied his motion to suppress evidence of his blood alcohol level. Appellant suggests that Officer Partington's use of the wrong form and the phlebotomist's incomplete affidavit show that the evidence should have been excluded.[3]

Section 724.012(b)(3)(B) of the Texas Transportation Code requires a peace officer to take a blood or breath specimen from a driver arrested for DWI who refuses to consent to the specimen if, "at the time of the arrest, the officer possesses or receives reliable information from a credible source that the person" has, on two or more occasions, been convicted or put on community supervision for DWI. TRANSP. § 724.012(b)(3)(B). Form THP-51, now used to document a mandatory blood draw, allows an officer to specify that he is acting in accordance with Section 724.012(b)(3)(B) of the Texas Transportation Code.

Officer Partington used form TLE-51, which was an earlier version of form THP-51. By signing form TLE-51, Officer Partington agreed to the following statement:

> Acting in my capacity as a peace officer, I have arrested the above-named person for an offense under Chapter 49 of the Texas Penal Code, such person was the operator of a motor vehicle or watercraft, involved in an accident that I reasonably believed occurred as a result of the offense. When I arrested the above-named person, I reasonably believed that a person had died or would die as a result of the accident, and the above-named person has prior to the issuance of this order refused my request to voluntarily give an appropriate specimen or specimens under the authority of Tex. Transp. Code Ann. Ch. 724.

---

[3]We note that Appellant does not challenge the constitutionality of the statute that authorized his blood draw. *See* TRANSP. § 724.012(b)(3)(B).

At trial, Officer Partington admitted that the form's statement was factually incorrect and that he did not read the form before he signed it.

Although Appellant argues that Officer Partington's use of form TLE-51 requires exclusion of any evidence related to his blood alcohol level, he cites no authority for his proposition. We have found no case law that directly addresses Appellant's contention, but we note that Chapter 724 does not require documentation of an officer's decision to order a mandatory blood draw. Section 724.031 requires a defendant who refuses to submit to a blood draw to sign a written statement indicating that the request was made, that warnings were given, and that the defendant refused to provide a blood specimen. Section 724.032 requires the police officer to file an accompanying written refusal report. *See* TRANSP. ch. 724 (West 2011 & Supp. 2014); *see also* TRANSP. §§ 724.031, 724.032.

Officer Partington testified that, at the time of Appellant's arrest, he was aware of Appellant's previous DWI convictions and aware that those convictions authorized a mandatory blood draw.[4] Officer Partington also stated that, upon Appellant's refusal to provide a blood or breath sample,[5] he gave Appellant the warnings contained in Section 724.015. *See* TRANSP. § 724.015. According to Officer Partington, he gave the warnings to Appellant while they were inside the hospital, and after Appellant received the warnings, Appellant voluntarily provided the blood sample.

---

[4]Additional evidence presented at trial confirmed that Appellant has been convicted of the offense of DWI on three prior occasions. Appellant does not challenge the existence of the convictions on appeal.

[5]The State argues that Appellant voluntarily provided a blood sample in this case. The video from Officer Partington's patrol car shows that Appellant originally consented to provide a breath sample but later withdrew that consent and refused to voluntarily provide a breath or blood sample. As of the time that Appellant and the officer exited the car, the blood draw was being referred to as a mandatory blood draw.

9

We hold that any error caused by Officer Partington's use of the TLE-51 form was cured by the officer's testimony. We also reject Appellant's claim that Smith's affidavit was required to be notarized in order for evidence of his blood alcohol level to be admissible. Appellant has cited no authority for his position, and we have found none. We hold that the affidavit's lack of notarization did not require the exclusion of evidence relating to Appellant's blood alcohol level.

Furthermore, even if we were to hold that the trial court erred in admitting the evidence, which we do not, the State adduced additional evidence that clearly established Appellant's intoxication. A vehicle similar to Appellant's was seen leaving the scene of a hit-and-run accident, and Appellant's vehicle was quickly located in the immediate area. Appellant's vehicle had significant damage that indicated a recent collision, and an open twelve-pack of beer was found inside the vehicle.

At the time of Appellant's arrest, several officers noticed that Appellant smelled strongly of alcohol, that his speech was slurred, and that his balance was unsteady. On the video taken from Officer Partington's patrol vehicle, Appellant admits to drinking five beers, and his speech is clearly slurred. Finally, Appellant showed signs of intoxication on all three standardized field sobriety tests. In light of the overwhelming evidence that Appellant was driving while intoxicated on the night of his arrest, any error in the admission of evidence related to his blood alcohol level did not influence the jury or had but a slight effect and should be disregarded. *See* TEX. R. APP. P. 44.2.

We hold that the trial court did not err when it denied Appellant's motion to suppress evidence of his blood alcohol level given that any errors in the documentation of Appellant's blood draw were cured by the testimony of those involved. We overrule Appellant's second point of error.

10

## C. Consecutive Sentences

Appellant argues in his final point of error that the trial court erred when it ordered his life sentence in this case to run consecutively to the life sentence he was on parole for at the time of trial. Appellant claims that the punishment is cruel and unusual because the trial court decided to stack his sentences without any argument or discussion. We find that Appellant has waived this issue on appeal by failing to object to his sentence at the time it was pronounced. *See* TEX. R. APP. P. 33.1(a); *Nicholas v. State*, 56 S.W.3d 760, 768 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd) ("The constitutional right to be free from cruel and unusual punishment may be waived.").

Even if Appellant had preserved error, we would find that his sentence was within the trial court's authority. Stacking otherwise valid and proportionate sentences for separate crimes does not make them disproportionate. CRIM. PROC. art. 42.08(a) (stating that, when the same defendant has been convicted in two or more cases, "in the discretion of the court, the judgment in the second and subsequent convictions may either be that the sentence imposed or suspended shall begin when the judgment and the sentence imposed or suspended in the preceding conviction has ceased to operate, or that the sentence imposed or suspended shall run concurrently with the other case or cases"); *Smith v. State*, 575 S.W.2d 41, 41 (Tex. Crim. App. 1979) ("Normally, the trial judge has absolute discretion to cumulate sentences."). Moreover, the act of cumulating sentences so that they run consecutively has been held not to constitute cruel and unusual punishment. *See, e.g., Stevens v. State*, 667 S.W.2d 534, 538 (Tex. Crim. App. 1984); *Baird v. State*, 455 S.W.2d 259 (Tex. Crim. App. 1970); *Quintana v. State*, 777 S.W.2d 474, 480 (Tex. App.—Corpus Christi 1989, pet. ref'd).

11

We hold that the trial court did not err when it ordered Appellant's life sentence in this case to run consecutively to the life sentence he was on parole for at the time of trial, as the action was within the court's discretion. We also reject Appellant's claim that his punishment is cruel and unusual because the trial court denied him the opportunity to present argument or discussion on the matter. A trial court is not required to explain its decision to impose a sentence that is within the statutory guidelines and is supported by the evidence. Furthermore, Appellant was not entitled to argue against the court's decision after it was announced. And, although he was free to file a motion for new trial urging such a complaint, he failed to do so. We overrule Appellant's final point of error.

V. *This Court's Ruling*

We affirm the judgment of the trial court.

MIKE WILLSON

JUSTICE

October 9, 2014

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.